## No. 19,156.

Morris Fine *v*. The People of the State of Colorado.
(360 P. [2d] 682)

Decided February 27, 1961.   Rehearing denied April 10, 1961.

Mr. HARRY M. WILLIAMS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. GEORGE W. NICASTRO, Special Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE HALL delivered the opinion of the Court.

PLAINTIFF in error Fine, defendant in the trial court, was charged in two counts of an information of having, on June 9, 1958:

(1)  converted to his own use $735.07 of the monies of C. N. Eddy, he then being in possession of the same as bailee for the purpose of delivering and paying the same to the Internal Revenue Service of the United States of America;

(2)  converted to his own use $500.00 of the monies of Cortez Laundry, Inc., he then being in possession of the same as bailee for the purpose of delivering and paying the same to the Internal Revenue Service of the United States of America.

The jury returned a verdict of guilty on both counts and thereafter defendant filed his motion and supple-

mentary motion for a new trial, urging as grounds therefor that:

1. The evidence is insufficient to sustain the verdicts and that motions for directed verdicts of not guilty made at the close of the People's case, at the close of defendant's defense, and at the close of all the testimony should have been granted.

2. That the Court committed prejudicial error in permitting to be introduced evidence of transactions similar to those on which defendant was being tried.

3. Newly-discovered evidence which would prove beyond any doubt that defendant was not present in Cortez, Colorado, at the time of the alleged crime.

The motion and supplementary motion for a new trial were denied on May 28, 1959, and on July 1, 1959, defendant was sentenced to the state penitentiary for a term of not less than two years nor more than four years on each count, the sentences to run concurrently.

Defendant is here by writ of error seeking reversal. He appears here with counsel who did not participate in any of the proceedings in the trial court, and he now urges for reversal several reasons that were never presented to the trial court.

We might very well refuse to consider these newly-urged reasons but, in order to be thoroughly satisfied as to the propriety of the conviction and sentences, we have given full consideration to the same.

The new reasons urged are that error was committed in that:

"I. Seizure by the People of defendant's books and records violated his right to a fair trial as guaranteed by the due process clauses of the U. S. Constitution and the Colorado Constitution in that defendant was then unable to properly defend himself.

\* \* \*

"II. Use of evidence against defendant seized in the raids violated his rights as guaranteed by the unreasonable search and seizure provisions of the Colorado Con-

stitution and the 14th Amendment of the U. S. Constitution.

\* \* \*

"V. The court abused its discretion in allowing the People to utilize the testimony of Lois Jean Frey in rebuttal."

The evidence was in conflict in some respects; however, much of it was documentary about which there could be and was no dispute. From the record it appears that on June 9, 1958, a check for $1235.07 payable to Fine was drawn, signed by one Eddy and delivered to Fine. This check was credited to Fine's account in the Citizens State Bank of Cortez on June 12, 1958. The check was not endorsed by Fine, but that it was credited to his account is unquestioned. An officer of the bank testified that endorsement under the circumstances shown was not required by the bank. The purpose of the check, to the extent of $735.07, was for the payment of Eddy's Federal income tax for 1957 and the balance of $500.00 was to be paid as the first quarter of his estimated 1958 Federal income tax. On June 11, Fine's bank balance was $93.26. On June 12, after the $1235.07 check was deposited, he checked against the account for $1200.00 for his private purposes, leaving a balance of $128.33. That he obtained $1235.07 of Eddy's money is not questioned. Fine, who is an accountant and kept books and performed various tax accounting services for Eddy, claimed that the money was paid to him for services rendered.

Prior to June 9, 1958, Fine had estimated Eddy's 1957 income tax to be between $750.00 and $800.00 and Eddy testified that Fine had him sign a tax return in blank to be completed by Fine and filed. On June 9, 1958, Fine presented to Eddy a copy of his 1957 return, stating that the original had been filed. This copy showed a tax due and unpaid of $735.07. He prepared for Eddy an estimate of tax to become due for 1958 showing a $500.00 payment then due thereon. According to the testimony of

Eddy his check in the amount of $1235.07 was given for the purpose of paying the amount of taxes due and the amount due on the estimate.

The 1957 return actually filed by Fine in behalf of Eddy showed an overpayment of $1.41, check for which was in due course mailed to and received by Eddy. This return and the estimate were filed with the Department on June 16, 1958. Fine did not pay the estimated quarterly tax of $500.00 nor the $735.07 shown to be due on the copy of the return given by Fine to Eddy.

On August 30, 1958, the day on which the information was filed, the court, on the district attorney's motion and after taking evidence in support thereof, entered an order directing the sheriff to take into his custody any books and records in the defendant's office in the county. As directed by the order, the sheriff seized a number of files, books and records. Fine petitioned the court for return of the books and records, hearing was had thereon, and the court ordered the sheriff to inventory everything taken and within twenty-four hours to submit a complete inventory to the clerk of the court; granted the district attorney one week within which to make an examination thereof and report to the court in writing, listing the books, records and papers which were not material or competent in the case which should be forthwith returned to Fine. The order further specified that following the week allotted to the district attorney for examination:

" * * * said books, records and papers shall then be made available to the Defendant, his agents and attorneys for study and examination."

The order was complied with, an inventory was made, signed and filed with the clerk and the documents lodged with the clerk and thereafter retained by him. None of the documents or records so seized were offered in evidence by the people.

Defendant argues that the fact that the district attorney had access to the material was of assistance to

the prosecution in presenting its evidence and in cross-examining defendant and that he, the defendant, was handicapped in preparing his defense because of the seizure and custody. This is not borne out by the record. Even had the district attorney been assisted in his thinking and in his conduct of the trial this violates no rule of law which has been called to our attention. Defendant Fine and his attorneys had access to the seized material for more than six months before, and during, the trial.

■ The seizure of defendant's records and the proceedings incident thereto are not challenged, except as above mentioned, wherein they broadly assert that there was an absence of due process of law. No case is cited nor found in our search considering the objection now made, that is, that the district attorney was aided and that he, Fine, was embarrassed in the preparation of his defense by the seizure, admittedly lawful, and that this establishes want of due process. Even though we could find from the record that these statements were true (as we cannot), it would afford no ground for reversal and this is particularly true when, as in this case, the motion for new trial makes no mention of the matters, the same being urged for the first time in this court.

■ The defendant contends that the evidence is insufficient to sustain the charge of larceny by bailee and in support thereof states in his brief that the:

" * * * net effect of the testimony on this point indicates quite clearly that Eddy and Venters thought they were paying these moneys [Eddy's $1235.07 and Venter's $2000.00] to reimburse the defendant for prior payment of taxes — which, of course, defeats any suggestion of a bailment."

Testimony of Eddy and Venters is very definite and positive that the money was given to Fine to be by him promptly turned over to the Director of Internal Revenue. Documents in evidence add great weight to this testimony. Understandably the jury found contrary to counsel's suggestion.

■ Counsel urges as grounds for reversal the fact that the trial court permitted the district attorney to offer evidence of an unreasonable number of similar offenses [transactions] for the purpose of showing plan, intent, scheme or design. Counsel concedes that it was proper to admit such evidence touching on a reasonable number of similar transactions, but urges that six such transactions was an unreasonable number and placed an undue burden on defendant's counsel. We can readily visualize counsel's problem, but note that the number of similar transactions available for presentation in the trial was within the exclusive control of Fine and he, having produced the evidence, should not complain of the alleged excessive amount thereof.

These six transactions were related to tax matters of Eddy's which Fine had in charge. Money advanced to Fine by Eddy for such taxes was utilized by Fine for his own purposes. One consisted of $2000.00 paid to Fine by one Venters for the payment of his Federal income taxes. All of these transactions, including that charged in the information, occurred within a matter of months in the Cortez area; all involved wrongful conversion of trust funds.

The necessary similarity is present and pronounced. The evidence was received and the jury given a cautionary instruction limiting its purpose to prove design, scheme and intent. We find no merit in this assignment of error.

■ In defendant's supplementary motion for new trial in which he urged that on June 9 and 12, 1958, the dates respectively on which the check for $1235.07 was issued and later deposited in the Cortez bank, he was not in Cortez but in Denver or Trinidad. Attached to his motion are affidavits of several persons showing such absence. Such evidence cannot be classified as *newly discovered*. It no doubt could have been more readily discovered prior to than after trial.

The information directed Fine's attention to the date

June 9, 1958. The deposit of the check and his immediate near depletion of the account on June 12 were unquestionably known to him then and at all times thereafter. No reason is apparent why he did not offer on the trial the evidence which he delineates in his supplementary motion.

Even though the evidence be regarded as newly discovered, yet the granting or denial of such a motion is addressed to the sound discretion of the trial court. A showing of due diligence, which is indispensable to granting such a motion, is entirely lacking. We find no abuse of discretion in the order of the trial court denying such motion.

The people called a witness in rebuttal whose name was not endorsed on the information. She testified *without objection* to the June 9 transaction at the laundry when the $1235.07 check was delivered to Fine. Fine had denied the transaction and denied that he was present on that occasion. Counsel now contends that this witness should have been used on presentation of the people's case and that calling her on rebuttal was error. When she was called in rebuttal no objection was made that she had not been endorsed as a witness; no objection was made by defense counsel to her testifying or to one word of her testimony nor was this alleged error suggested in the motion for new trial.

The verdict is fully supported by competent evidence. Finding no error in any of the pre-trial, trial, or post-trial proceedings, the judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE DAY not participating.