## IN RE THOMAS.

1. EXCLUSION OF WOMEN AS ATTORNEYS AT LAW.— By ancient and universal usage women have been denied the right to practice law before the English courts. And during the early history of this country, a like exclusion from the profession generally prevailed.

2. CHANGE IN LEGAL STATUS OF WOMEN NEUTRALIZES PRECEDENTS.— A rule at the present time should not be rested upon the ground of custom or usage in relation to the exclusion of women from the profession in England or in the American colonies, or in the republic during its infancy. The marvelous change throughout this country of the last fifty years in the legal *status* of woman greatly neutralizes the force as a precedent of such custom or usage.

3. POLICY OF LEGISLATION RESPECTING WOMEN.— The uniform and unmistakable policy of legislation in this state is to extend the legal rights of women, and enlarge their sphere of occupation and usefulness. The right is unquestioned of women of sufficient age, married or single, to enter all the learned professions (except the law), to pursue all vocations and enterprises of a business character, and to make contracts, form partnerships, inherit, acquire and dispose of property in all respects substantially the same as men.

4. APPLICATIONS FOR ADMISSION TO THE BAR — HOW REGARDED.— Unless restrictive provisions be found in the statutes or constitution, applications for admission to the bar should be regarded with the judicial favor usually extended when equality of rights is involved.

5. CONSTRUCTION OF STATUTES.— A statute is to be interpreted in the light of other statutes constituting a part of the same legislative system.

6. APPLICATION OF RULE EXTENDING MASCULINE PRONOUNS TO FEMALES.— The masculine pronoun is used in certain provisions of the

statutes regulating admissions to the bar.   But the context of the act indicates that the rule extending words importing the masculine gender to females is applicable.

7. QUALIFIED ELECTORS ONLY ELIGIBLE TO OFFICE BY GENERAL PUBLIC.— Section 6, article 7, of the constitution prohibits the election or appointment to civil or military offices of any person except qualified electors.

8. ATTORNEYS AT LAW NOT WITHIN ABOVE CONSTITUTIONAL PROVISION.— But this provision refers to those offices which involve an election or appointment by or on behalf of the general public, and the performance of duties essentially public in their nature.   And attorneys at law are not *per se* "civil officers" within its meaning

*Petition for Admission to the Bar.*

Mr. J. WARNER MILLS, for petitioner.

JOSEPH H. MAUPIN, attorney-general, *amicus curiæ.*

CHIEF JUSTICE HELM delivered the opinion of the court.

Petitioner, Mrs. Mary S. Thomas, asks to have her name placed upon the roll of attorneys practicing before this and other courts of the state.   She tenders credentials attesting the prescribed professional qualifications and a compliance with all express requirements of the statute and rules of court regulating access to the legal profession.   The question is therefore squarely presented: Are women entitled to admission to the bar of this state on equal terms with men?

By ancient and universal usage women have been denied the right to practice before the English courts.   The two or three exceptions cited in petitioner's brief, such as that of Anne, countess of Pembroke, are not well authenticated. During the early history of this country a like exclusion from the profession generally prevailed; though a few instances are recorded, as in the case of Margaret Brent, also mentioned in petitioner's brief, where they were permitted to appear specially in particular proceedings.   In the District of Columbia, and in Massachusetts, Illinois and Wisconsin, within a period comparatively recent, such applica-

tions have been rejected, the courts promulgating learned opinions in connection therewith. Fifteen years ago the supreme court of the United States also denied the right. The case was not reported, but the chief justice in orally epitomizing the reasons for adverse action declared that the court had concluded to adhere to the uniform custom since its organization of licensing men only, till " a change is required by statute or a more extended practice in the highest courts of the states."  *In re Lockwood,* 9 N. & H. 346; *Ex parte Robinson,* 131 Mass. 376, citing the above ruling of the United States supreme court; *In re Bradwell,* 55 Ill. 535; *Ex parte Goodell,* 39 Wis. 232.  The written opinions mentioned marshal all objections to conferring this privilege upon women, dwelling with especial force and clearness upon those existing outside of constitutional and statutory provisions.  They ably discuss questions of impropriety and inexpediency based upon the laws of nature, the bearing of historical customs and usages, and the impediments growing out of woman's legal *status* at the common law.

With all deference to those learned courts, we decline to imitate their example in the latter regard.  We shall not indulge in speculation concerning the natural aptitude and physical ability of women to perform the duties of the profession; nor shall we dwell upon considerations of propriety or expediency in the premises.  These are matters as to which wide differences of opinion exist; and we conceive that they have little, if any, bearing upon similar applications now presented in this state, however pertinent they may have been in the commonwealths referred to when the above rulings were made.  We shall likewise decline to give controlling weight to historic custom or usage in England, in the American colonies, and in the republic during its infancy.  Reasoning, predicated upon the latter ground, possesses the inherent weakness of ignoring to a greater or less extent the marvelous changes throughout the country during the last fifty years in the legal *status* of woman.

It is a significant circumstance, indicating the trend of popular sentiment on the subject, that each of the cases above referred to was speedily followed by a statute providing for the admission of women to the profession. The supreme court of the United States and the courts of the District of Columbia, Massachusetts, Illinois and Wisconsin no longer adhere to the rule of discrimination on the ground of sex. Women are now licensed without question to practice in these courts as well as in those of several other states upon the same conditions as men; save only that the act of congress requires three years' membership of the bar of the highest court in some state or territory as a condition precedent to their appearance before the supreme court of the United States.

In this commonwealth, women of sufficient age, married or single, may make contracts, form partnerships, inherit, acquire and dispose of property in all respects substantially the same as men. The policy of our legislative and judicial action has tended constantly toward conferring upon them the same property rights and business *status* as are enjoyed by men. They may undoubtedly pursue all vocations and enterprises of a business character. They may also become ministers, physicians or educators, and if any limitation in regard to the learned professions exists, such limitation applies solely to the bar. The privilege of practicing this profession and sharing in its emoluments is alone questioned.

Hence we contend with none of the difficulties encountered by the courts above mentioned arising from the disabilities of women, especially married women, at the common law. Applications like the one before us may, therefore, be regarded with the judicial favor usually extended when equality of rights is involved, unless some restrictive provision be found in our statutes or constitution.

Turning to the act regulating the licensing of attorneys, and defining their duties, liabilities, etc., we find nothing that in our judgment fairly shows a legislative intent to

bestow this privilege upon men exclusively. The substantive phrases used throughout the act when speaking of applicants cover both sexes. They are, "no person" and "any person," as "No person shall be permitted to practice, * * * ;" "No person whose name is not subscribed, * * * ;" "Any person producing a license from any court of record, * * * ;" "If any person not licensed as aforesaid shall receive any money, * * * ." The pronouns employed with reference both to applicants and licensed attorneys are, it is true, masculine; but this fact, standing alone, is a matter of very little significance. The masculine pronoun is constantly used in legal and secular literature to designate both sexes; besides it is expressly provided by law here, as in other states, that unless the language contains something inconsistent therewith, this rule may be followed in construing statutes. "Every word importing the masculine gender only, may extend to and be applied to females as well as males." Mills' Ann. Stats., sec. 4185. There is no language in the act under consideration inconsistent with the application to its construction of this statutory guide. We are not unmindful of the rule that a statute is to be interpreted in the light of other statutes constituting a part of the same legislative system. But, as already suggested, the uniform and unmistakable policy of our legislation as shown in numerous provisions has been to extend the legal rights of women and enlarge their sphere of occupation and usefulness.

The proposition, however, is advanced with plausibility and force, that section 6, article 7, of the constitution indirectly but clearly forbids licensing women to practice law. This section reads: "No person except a qualified elector shall be elected or appointed to any civil or military office in the state." It is argued that attorneys are *civil officers*, and that since women are not electors they cannot become attorneys. Women may participate in school elections and hold certain offices connected with the public schools, but they are not such electors as this section of the constitution

contemplates. The constitutional term "qualified elector" is here "used in its broadest sense, meaning a person qualified to vote generally." *In re Notaries Public*, 9 Colo. 628. The limitation declared by this provision is plain, and if attorneys at law are *civil officers* within its meaning, the objection must be sustained.

The phrase "civil office" as thus employed is frequently used interchangeably with the term "public trust;" it undoubtedly relates to *public* offices; that is, to those offices which involve an election or appointment by or on behalf of the general public and the performance of duties essentially public in their nature. See *Cohen v. Wright*, 22 Cal. 293; also Weeks on Attorneys at Law, sec. 39, citing cases from Alabama, Virginia, New York and South Carolina.

Attorneys at law are constantly spoken of as "officers of the court." The designation is not inaccurate. Their special researches and general legal knowledge enable them to aid the courts and thus to contribute toward the due administration of justice. The office is therefore an important one, and the attorney incidentally performs a *quasi*-public duty. But admission to the profession is purely a private matter and is secured solely for the advancement of private interests. By virtue of such admission attorneys are not required to perform specific public acts, nor are specified duties developed upon them in behalf of the general public. The duties they assume and the labor they perform are usually in pursuance of personal contracts with private litigants. Admission to the bar is an essential prerequisite to the filling of certain offices, such as prosecuting attorney and judges of supreme, district and other courts. But these public trusts and the functions connected therewith devolve only upon members of the profession by virtue of an independent election or appointment. Until thus designated, they can no more enter into offices where the functions are of a public nature than can unlicensed persons wholly ignorant of the law. Our conclusion is that attorneys at law are not *per se* civil officers within the meaning of the constitu-

tional phrase under consideration.    See authorities last above cited.

The major premise of the argument in support of a constitutional inhibition thus proves upon examination to be untrue, and of course the conclusion falls.    That instrument, so far as we are aware, contains nothing inconsistent with the admission of women to the bar.    If there were anything in the rules or usages of the court involving this inconsistency, we would feel that a modification of such rules or usages should now be made.    We have no disposition to postpone falling into line with the supreme court of the United States and other enlightened tribunals throughout the country that have finally, voluntarily, or in obedience to statutory injunction, discarded the criterion of sex and opened the door of the profession to women as well as men.

The prayer of petitioner will be granted.    It is ordered that her name be placed upon the roll of attorneys.

*Application granted.*