No. 21592.

Pete Schamber *v.* The People of the State
of Colorado.
(410 P.2d 514)

Decided January 24, 1966.

Walter F. Scherer, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey,

Deputy, JOHN E. BUSH, Assistant, GEORGE H. SIBLEY, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

SCHAMBER, who will hereinafter be referred to as the defendant, and one Cisneros were jointly charged with aggravated robbery and conspiracy to commit aggravated robbery. The defendant sought and obtained a separate trial from his co-defendant, Cisneros. Upon trial a jury adjudged the defendant to be guilty of both charges and he was thereafter duly sentenced to a term of from six to ten years in the state penitentiary on each count of the information, the sentences to run concurrently and not consecutively.

By writ of error the defendant now seeks reversal of these judgments and sentences, and his only contention is that the evidence — which is essentially circumstantial in nature — is legally insufficient to support the verdicts returned by the jury. With this contention we do not agree, as in our view the evidence is legally sufficient to support the jury's verdicts.

In order to give meaning and substance to our conclusion that the evidence *is* sufficient to support the verdicts returned by the jury, it becomes necessary to at least synopsize the evidence adduced upon trial. The defendant elected not to testify and otherwise offered no evidence in his behalf. Hence, our problem is whether the People offered sufficient evidence to make out a prima facie case which would require submission of the matter to the jury. Let us then examine the evidence which establishes or tends to establish that the defendant was guilty of aggravated robbery and conspiracy to commit aggravated robbery in connection with the holdup of a North Denver filling station.

The evidence undisputedly establishes that Cisneros, at gun point, assaulted one Gustin, a filling station attendant, and robbed him of about $40. It is equally undisputed that at the precise time of this robbery the defendant was not physically present inside the filling station proper, where the robbery occurred. It is the People's position, however, that the evidence establishes that even though he was not present at the time of the aforementioned robbery, the defendant was nonetheless guilty as an accessory, as such is defined in C.R.S. 1963, 40-1-12, and at the same time under the same evidence was also guilty of conspiracy, as defined in C.R.S. 1963, 40-7-35.

The evidence which ties this particular defendant into the robbery and conspiracy may be summarized as follows:

1. the defendant and Cisneros were together on the evening of the robbery, both before and after the time when the station attendant was assaulted and robbed;

2. about five minutes before the robbery, the defendant went in to the filling station proper to purportedly make a phone call;

3. the robbery victim, Gustin, recognized the defendant as one he had known casually a "long time ago" and accordingly struck up a conversation with him;

4. in the course of their short conversation the defendant asked Gustin "not to let anyone know that he [the defendant] had been around";

5. in explanation of his request the defendant told Gustin that he had been in some sort of trouble and that if he "were ever going to hold up a place it would be a place where they had some money";

6. the defendant made some indirect inquiry as to the amount of money then on hand in the filling station, but Gustin could not recall whether he made any response to this question;

7. within no more than 5 minutes after the defendant left the filling station, Gustin at gun point was assaulted

and robbed of about $40 by one whom he identified upon trial as Cisneros;

8. upon learning that the defendant had visited the station only minutes before the robbery, the police officers went to the defendant's home, and the defendant not being at home, the police officers awaited his arrival;

9. about 5 o'clock in the morning, defendant and Cisneros came to the former's home and both climbed in through an open bedroom window;

10. when the police officers arrested the two, the defendant broke and ran and was shot by the police in order to stop his flight and prevent his escape; and

11. when the defendant was finally taken into custody he told Cisneros: "good luck, Tony, and don't tell them a thing."

In our considered view the evidence which has been summarized above is legally sufficient to support the verdicts of the jury. The evidence shows the opportunity to commit the crimes with which the defendant stood charged, this is to say the evidence discloses that the defendant was in close proximity as regards both the time and place where the principal committed the robbery. Furthermore, the evidence discloses flight or attempted flight by the defendant when the police officers sought to question him. Also, there is evidence of an admission against interest spontaneously uttered by the defendant when upon his arrest he requested his friend, the principal in the robbery, not to tell the police a thing. Finally, the conversation between the defendant and the filling station attendant occurring only a few minutes before the actual robbery, instead of being "innocuous" as asserted by counsel, is on the contrary highly significant and definitely of an incriminating nature.

As already noted, the defendant upon trial elected not to testify, a right guaranteed by the constitution. However, as was said in *Allison v. People,* 109 Colo. 295, 125 P.2d 146, a defendant upon review cannot

successfully complain when the jurors have drawn inferences against him which are warranted by the evidence. And such is particularly true where, as here, the defendant has elected not to testify nor has he otherwise offered any evidence in his own behalf. In other words, a jury is permitted to draw any and all *reasonable* inferences of guilt from the evidence before it.

So, in the instant case and by way of example only, we conclude that the jury could reasonably infer that the reason the defendant cautioned the filling station attendant "not to let anybody know that he had been there" was that he did not want to be connected with the impending robbery which he then knew was about to occur and to which he was a party. In like manner the evidence when considered in its entirety amply warrants the inference that this defendant was, in the vernacular, "casing" the filling station, and was thereby aiding, abetting and assisting the principal.

It is for these reasons that the judgment is affirmed.