No. 22285.

EUGENE L. KELLEY *v.* THE PEOPLE OF THE STATE
OF COLORADO.
(443 P.2d 734)

Decided July 15, 1968.    Rehearing denied August 6, 1968.

JAMES W. HEYER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

Eugene L. Kelley, hereinafter referred to as the defendant, was convicted by a jury of his peers of the larceny by bailee of an automobile of the value of $2,500 and thereafter he was sentenced to a term of from three to five years in the state penitentiary. By writ of error the defendant now seeks reversal of the judgment and sentence thus entered, and as grounds therefor argues that the trial court erred in three particulars.

I.

It is first urged that there was insufficient evidence to establish that the automobile in question was delivered to the defendant or that he thereafter converted it to his own use with an intent to *permanently* deprive the owner of his property. Therefore, according to the defendant, the trial court should have directed a verdict in his favor.

Evidence adduced by the People upon trial of the matter disclosed that the defendant appeared on the car lot of the Ling Motor Co., a Colorado Corporation about noon on May 9, 1964 and, after using a fictitious name, indicated a desire to buy an automobile. He was shown a Falcon Ranchero pick-up truck and after a short demonstration drive, in the company of a salesman, the defendant left with the promise to return with his wife who, he said, would have "to approve the deal." About six o'clock on that same date the defendant returned to the premises of the Ling Motor Co. with a woman whom he introduced as his wife. After a short discussion the salesman then permitted the defendant and his wife to take the car for a demonstration drive. The salesman testified that as the two drove from the car lot the wife said she would drive it, but "I'm not guaranteeing that I'll buy it"!

When after about three hours the vehicle had not been returned, the incident was reported to the police. About six days later the missing Ranchero reappeared on the car lot of the Ling Motor Co., with the dealer's plates having been removed, a decal bearing the words "Ling

Motor Co." having been scraped off the rear of the automobile, and the transmission bolts loosened.

The argument of the defendant that the People's evidence showed that the vehicle was entrusted to his wife and not to him, is in our view a bit specious. The defendant made the first contact with the victim and proceeded to set the stage, so to speak. Then the defendant and a woman whom he introduced as his wife appeared on the scene and the vehicle was thereafter actually delivered over to *both* of them. Under this set of facts *both* the defendant and his wife could well have been charged with larceny by bailee. However, the mere fact that the wife happened to be at the wheel when the two thereafter drove away does not exonerate the defendant or otherwise shield him from criminal prosecution. Viewing the People's evidence in a light most favorable to the defendant, the defendant would still be an accessory, inasmuch as he was standing by and aiding and abetting in the perpetration of the crime. C.R.S. 1963, 40-1-12. And this type of an accessory, according to the statute, is to be deemed and considered as a principal and punished as such.

Nor is the further contention that there is no evidence of a "larcenous conversion" a tenable one. The fact that a thief may recant and elect to return to the owner the fruits of his larcenous conduct does not purge him of guilt or serve as a defense to prosecution. 52 C.J.S. 862 and *Hammons v. People,* 102 Colo. 127, 77 P.2d 645. In any event, in the instant case the issue as to whether there was the intent to *permanently* deprive the owner of his property was submitted to the jury under appropriate instruction, and the jury has now resolved this matter adversely to the defendant.

II.

One Alfred C. Ling, Jr. testified that he was in the automobile business in Thornton, Colorado, and was doing business as the Ling Motor Company, a Colorado Corporation. This witness went on to testify that he

"owned" the 1964 Ranchero which "disappeared" from the car lot on May 9, 1964.

Complaint is now made by the defendant that the evidence relating to the corporate nature of the victim was not competent and that counsel was improperly restricted in cross-examination designed to show that the Ling Motor Co. was not the real owner of the vehicle. We perceive no merit in either of these related contentions.

In *People v. Lamb,* 165 Colo. 332, 438 P.2d 699 we disapproved of a ruling by a trial court that the best evidence rule precluded the president of a company from further testifying that the entity was a corporation. And actually whether the Ling Motor Co. on May 9, 1964 was a *de jure* or *de facto* corporation was not an issue in the case. Hence, Ling's testimony concerning the corporate nature of his business in a sense related to an immaterial matter. In *Straub v. People,* 145 Colo. 275, 358 P.2d 615, we made the following comment:

"[H]ere the corporate existence of 'The Continental Oil Company' was not a factor in the description either of the owner of the stolen property or of the person by whom it was stolen. The defendant could not have been misled by the allegation of corporate entity, nor prejudiced by failure of the prosecution to prove it. The defendant is fully protected against prosecution for the same offense, and his substantial rights were in no manner adversely affected. Under such circumstances the failure to prove the corporate status of the victim was an immaterial variance contemplated by C.R.S. '53, 39-7-17, and not prejudicial to the accused."

Nor is a larceny case the proper platform to determine the so-called legal ownership of a chattel. In *Sloan v. People,* 65 Colo. 456, 176 P. 481 we stated that the "actual condition of the legal title is immaterial to the thief [and] so far as he is concerned, one may be taken as the owner who was in peaceable possession of it, and

whose possession was unlawfully disturbed by the taking."

■■ Therefore, in a larcency case, it is sufficient to show that the named victim had possession, control and custody of the chattel which was the alleged object of the larceny. Certainly in the instant case there is evidence to establish that the Ling Motor Company had possession, control, and custody of the vehicle in question, even though no certificate of title thereto was ever introduced in evidence.

III.

Lastly, the defendant suggests, and very vigorously, that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Upon trial the witness Pierson, a car salesman for the Ling Motor Company, "positively" identified the defendant as the person with whom he dealt on May 9, 1964 and the person to whom he delivered the Falcon Ranchero here in question. The defendant testified, however, that this was a case of mistaken identity and that it was not he who obtained the Ranchero from Pierson and thereafter failed to return it. In support of his testimony the defendant attempted to establish an alibi. He testified that on May 9, 1964 he and his wife and their two children were in Grand Junction, Colorado and that they left that city at about noon for Denver. He stated that they then arrived in Denver at about six o'clock P.M. on that same day and immediately thereafter visited relatives in two Denver hospitals. The defendant's alibi was generally corroborated by his wife, his mother and his parents-in-law.

In his motion for new trial the defendant submitted affidavits of several other persons, who were not relatives, who, if a new trial were held, would presumably offer testimony which would tend in varying degrees to further corroborate his alibi. Also, a polygraph examiner concluded as a result of his testing of the defendant that the defendant was telling the truth when he testified

that it was not he who obtained the Ranchero from the Ling Motor Company.

After several hearings the trial court denied the motion for new trial based on allegedly newly discovered evidence. The trial judge not only considered the affidavits, but also actually took testimony from some of the newly discovered witnesses, as well as from certain other witnesses called by the district attorney in opposition to the motion for a new trial.

█ A motion for new trial based on newly discovered evidence is generally not looked upon with great favor. In *Edwards v. People,* 73 Colo. 377, 215 P. 855 appears the following appropriate comment:

"The general rule is that courts look with disfavor upon applications for a new trial upon the ground of newly discovered evidence. To look with favor upon them would bring about a looseness in practice, and encourage counsel to neglect to gather all available evidence for a first trial, and speculate upon the verdict, and if defeated, then to be diligent in securing other evidence to cure the defects or omissions in their showing at the first trial. Courts will see to it that there is not a miscarriage of justice, and are sometimes indulgent in their requirements as to a showing of newly discovered evidence, if they are impressed with the conviction that there has been a miscarriage of justice, even if the newly discovered evidence be incidentally impeaching in its nature and merely cumulative, when satisfied that there is probable cause that the result would be different as the result of such testimony. We do not believe there has been a miscarriage of justice in this case and due diligence was not shown."

█ In our view in the instant case the allegedly newly discovered evidence is cumulative in nature and is of a type that could have been discovered *before* trial by the exercise of due diligence. It should be noted that the trial of this matter did not take place until about a year and a half after the filing of the information,

which obviously gave the defendant more than adequate time to prepare his defense to the charge. Such then being the case, the trial court did not err in denying the defendant's motion for a new trial. See *Fine v. People,* 145 Colo. 514, 360 P.2d 682, which also involved a motion for new trial based on newly discovered evidence bearing upon the defense of alibi.

In so holding we recognize full-well the *possibility* that the defendant is a victim of a mistaken identity. But this court is not a fact finding body. The witness Pierson definitely identified the defendant as the one who obtained the Ranchero in question. The defendant denied all, and tried to establish an alibi. This posed an issue of fact which under our system of jurisprudence was in the instant case resolved by twelve jurors, each of whom *saw* and *heard* the several witnesses. The jury is obviously in a much better position than we are to resolve this matter, inasmuch as we did not see or hear the several witnesses, and all we know about the matter is what we have *read* from the cold record of the trial.

As a safeguard against miscarriage of justice, the trial judge, if he be so inclined, can grant a new trial. And in the instant case, the fact that the trial judge after a *very* full and complete hearing denied the motion for a new trial is an important factor to be considered. Certainly the trial judge, who is in command of the actual trial, is in a better position than we to determine whether this truly is a case of mistaken identity resulting in a miscarriage of justice.

But should time and subsequent events establish that this defendant is in fact innocent of the crime, then under our system of government executive clemency would be in order. In a criminal proceeding the People are not required to prove a defendant's guilt with absolute mathematical certainty. Rather, the material allegations in the charge need only be established beyond a *reasonable* doubt. In the instant case there is

evidence — which evidence the jury obviously believed — that it was the defendant who did in fact commit the crime with which he was charged. In this setting we are not at liberty to reverse this conviction on the basis of a *possibility* that the defendant may be innocent.

The judgment is affirmed.

MR. JUSTICE HODGES and MR. JUSTICE KELLEY concur.