No. 23478.

Raymond J. Vigil v. The People of the State of Colorado.
(482 P.2d 983)

Decided March 29, 1971.

EDWARD H. SHERMAN, Public Defender, EDWARD L. KIRKWOOD, Assistant, EARL S. WYLDER, Assistant, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, MICHAEL T. HALEY, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS matter is here for review on writ of error from a conviction of aggravated robbery.

On September 14, 1966, a robbery was committed at the DeBell Grocery Store just as the owner of the store, Mr. DeBell, was preparing to close the store for the day. The defendant Vigil entered and asked if Mr. DeBell was getting ready to close and if Mr. DeBell's wife had already left. Vigil received an affirmative reply to both questions. A minute later a man carrying a hand gun entered the store and commanded DeBell and the defendant to do as they were told or they would get hurt. He then took money and a check from the person of DeBell and money from the cash register. DeBell was ordered to lie on the floor. The gunman then directed the defendant to remove DeBell's glasses and tie him up. DeBell was told to remain on the floor for ten minutes or he would be hurt.

When DeBell got up, the defendant and the gunman were gone. The defendant did not return to the store.

The gunman was later identified as Mr. Mares. He was arrested two weeks later while driving the defendant's car. The defendant and one other person were in the car at the time. When Mares was arrested, the defendant was advised of his constitutional rights, questioned and released. A few days later the defendant was again arrested. After being advised for a second time of his rights, he voluntarily discussed his presence at DeBell's Grocery Store with the police. During the discussion, the defendant made the following statement:

". . . I was in DeBell's store on the day it was robbed. I

always go in there to buy tomatoes. I did ask the grocer about his wife because I always talked to her. This guy with the gun made me tie the guy that runs the store. I couldn't remember what I tied him with. I didn't take any money. I told both the grocer and the guy that had the gun that I didn't want anything to do with this. The bandit took my wallet. The bandit made me lay on the floor. I ran out right after the bandit left to see which way he went. I did see him get into a car. I wouldn't say what kind of car it was. I think I know the guy with the gun, and can identify him, but won't. I had some groceries that I was going to buy." Question: "Did you return to the store after you followed the bandit?" Answer: "No." Question: "Why?" Answer: "Because I didn't have any money to pay for the groceries. I only had about 58¢."

On the date of the defendant's second arrest, Mr. DeBell identified him in a line-up. Subsequently, the defendant was tried and a jury found him guilty of aggravated robbery. The defendant moved for a new trial and from the denial of that motion, appeals to this court.

The defendant sets forth four basic assignments of error which we will discuss in numerical sequence as set forth below. Finding no reversible error, we affirm the judgment of the trial court.

I.

The defendant challenges the sufficiency of the evidence to sustain the prosecution's burden of proving defendant guilty as an accessory during the fact to the crime of aggravated robbery.

The scope of our review is limited to determination of whether there is sufficient evidence to support the verdict of the trial court. On an appeal by the defendant, the evidence must be viewed in a light most favorable to the People. *Wilson v. People*, 143 Colo. 544, 354 P.2d 588. The defendant elected not to testify. His statement did not create any substantial conflicts in the evidence. To the extent that there were conflicts, the

jury resolved them in favor of the People. The jury may draw any and all reasonable inferences from the evidence before it. *Schamber v. People,* 159 Colo. 102, 410 P.2d 514, 516. After examining the record, we have concluded that sufficient evidence was presented to justify the jury's verdict.

## II.

■ On appeal the defendant claims for the first time that his statement, exculpatory in nature, was obtained in violation of *Miranda* and *Escobedo* rights.

Inasmuch as the introduction of the defendant's aforementioned statement was not objected to at the time of trial, nor raised in the motion for new trial, we normally would not consider the issue on review. However, because of the seriousness of the charge, we will examine the alleged error.

The defendant made three visits to the police station. On his first visit after a purported *Miranda* warning he remained silent. On his second visit, the record indicates that he discussed something unrelated to his involvement in the present case. On his third visit, under arrest for his participation in the DeBell robbery, he was again given a purported *Miranda* warning.

The defendant's response to the advisement was, "I don't need a lawyer." He then made the statement which was offered in evidence by the People. At the time the offer was made, counsel for the defendant stated, "Well, the defense is satisfied that the defendant was advised of his constitutional rights at the time the statement was taken...."

The evidence of the People that the statement was voluntary and uncoerced is not challenged. There is nothing in the record to indicate either overt or subtle coercion.

It is obvious that the defendant initially made the statement in the expectation, or at least the hope, that it would absolve him of complicity in the crime. At the trial he and his counsel undoubtedly believed that it was better

strategy to place the defendant's story of his participation in the incident before the jury by way of his extrajudicial statement rather than take the witness stand and subject his "story" to cross-examination by the district attorney.

This was a choice he had to make. Having made the choice and lost he is not entitled to try a different strategy in the hope that the result would be more favorable on retrial of the charge.

■ The sixth amendment right to counsel is not violated by any lack of clairvoyance on the part of counsel as to the effect his client's extrajudicial statement may have on the jury. *Valdez v. District Court,* 171 Colo. 436, 467 P.2d 825; *Dolan v. People,* 168 Colo. 19, 449 P.2d 828, and cases cited therein. *See also Reed v. People,* 174 Colo. 43, 482 P.2d 110.

### III.

The defendant assigns error in the admission of certain evidence obtained from the principal, Mr. Mares, which was used to prove the guilt of the principal.

While in custody, Mares made a confession to a police officer relating to his participation as the principal in the robbery. The officer's testimony as to the content of this confession is assigned as error.

■■ It is fundamental law that when one is tried as an accessory to a crime, it is necessary to prove beyond a reasonable doubt the guilt of the principal as a prerequisite to convicting the accessory. *Stewart v. People,* 161 Colo. 1, 419 P.2d 650; *see also Colosacco v. United States,* 196 F.2d 165. The trial court carefully advised the jury as to the purpose of Mr. Mares' hearsay confession. The procedures followed are in accord with the requirements of the *Stewart* case, *supra.* The trial court followed the proper procedure, consequently, there was no error in this regard.

■ One of the items of proof of Mr. Mares' participation in the crime was a check that was taken from Mr. DeBell during the robbery, which had been recovered from Mr. Mares at the time of his arrest. The original

check was unavailable. In order to prove this fact, evidence explaining its disappearance was introduced. The People showed that following Mr. Mares' arrest, he had been left alone in an interrogation room with the check, and when the police returned, Mares was observed chewing. A thorough search of the interrogation room failed to disclose the check. The defendant claims that the introduction of this explanatory evidence was prejudicial. Before secondary evidence of proof of a fact can be introduced, the absence of the original must be explained. The foregoing circumstances were introduced for that purpose.

## IV.

██ Defendant alleges error in the failure to provide counsel for him during a line-up procedure.

The defendant relies upon *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d, 1178, in support of his alleged error. However, the defendant overlooked *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, which holds that *Wade, supra,* and *Gilbert, supra,* apply only to cases involving confrontations for identification purposes conducted in the absence of counsel after June 12, 1967. *Phillips v. People*, 170 Colo. 520, 462 P.2d 594; *Armstead v. People*, 168 Colo. 485, 452 P.2d 8. The line-up and identification in the present case took place on October 3, 1966.

We find no reversible error.

Judgment affirmed.