## No. 25531

The People of the State of Colorado v. Leroy Daniel Marques, and Anthony James Maldonado a/k/a Anthony James Martinez

(520 P.2d 113)

Decided March 11, 1974.                    Rehearing denied April 8, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, David A. Sorenson, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Lee Belstock, Deputy, for defendants-appellants.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Defendants, Leroy Marques and Anthony Maldonado, appeal their conviction of theft over $100, 1967 Perm. Supp., C.R.S. 1963, 40-5-2.

The prosecution's case showed that at approximately 5:00 p.m. on August 11, 1971, Leroy Marques pulled up and stopped in front of a house directly east of 417 West Kiowa in Colorado Springs. Joseph Marques got out of the car, left the car door open, and went east on Kiowa to the Empire Welding Supply Company which is located on 28 North Spruce Street. The witness observing these actions testified that she could not tell whether the motor was left running while at the curb.

Anthony Maldonado got out of the back seat and stood by the car. Apparently, Joseph Marques entered the supply company, went behind the customer counter to a file cabinet, and took the company's cash box which contained approximately $40 in cash, $927 in checks, which were endorsed for deposit only, and a key to a rotor file. He left the store, running in the direction of the parked car, carrying the cash box under his arm. Maldonado got into the front seat. Joseph Marques either got into the back seat or continued running past the car and was later picked up.

The car made a U-turn and turned left at the intersection onto Walnut Street. Shortly thereafter, the police apprehended the defendants. A search of the car revealed a rotor key on the front seat and a "yahtzee" can containing $10.76 in change underneath a rag on the front seat. The officer found $27 in currency and $1.28 in change on Maldonado, $12 in currency on Joseph Marques, but no money was found on Leroy Marques. Defendants denied that they had any knowledge of the incident. On the following afternoon, Joseph Marques took the officer to an alley a block from the scene of the crime. There the checks were found in a trash can. It was stipulated that Joseph Marques died prior to the trial and, therefore, was unable to testify.

The defendants testified in their own behalf. Leroy Marques testified that he was at home when his brother, Joseph Marques, called. Joseph told his mother that he needed a ride home. His mother asked Leroy to go pick up Joseph. Leroy and his two young nephews went to his sister's house to pick up Joseph. When he got there, Joseph Marques and Anthony Maldonado got in. On the way home, Joseph asked Leroy to stop in the 400 block of West Kiowa. Joseph did not tell him why he wanted him to stop or what he was going to do. Leroy did not know anyone in the area.

Maldonado testified that Leroy picked him and Joseph up for the purpose of taking them to get dance tickets, to go to the barber shop and to look for an apartment or motel. He and Leroy remained at the car when Joseph got out to go see somebody. When he saw Joseph being chased back towards

the car, he jumped out of the car to help Joseph. Joseph ran by the car, and Maldonado got in. Leroy made a U-turn, rounded the corner, and picked up Joseph. Shortly thereafter they were arrested. They testified that they lied to the police officer to protect Joseph Marques; however, they did not know that Joseph intended to commit a theft when he left the car.

Defendants were tried jointly before a jury. The trial court denied their motions for acquittal at the close of the prosecution's case and at the close of all the evidence. The trial court refused to instruct the jury on theft under $100, 1967 Perm. Supp., C.R.S. 1963, 40-5-2, holding that the issue of value was not for the jury to determine, since the checks, as a matter of law, had a value of more than $100.

On appeal, defendants contend that the trial court erred (1) in finding as a matter of law, that the property taken had a value in excess of $100, and (2) by failing to direct a verdict of acquittal for lack of sufficient evidence to allow the case to go to the jury.

## I.

Defendants argue that the trial court erred in finding, as a matter of law, that the property taken had a value in excess of $100. On appeal, they concede that the checks, which were taken from Empire Supply, had an aggregate face amount of $927.96. They contend, however, that (A) checks are not the subject of larceny under the statute and (B) the value of these checks was not shown by the evidence.

## A.

The defendants were convicted as accessories to the crime of theft under the following provision of 1967 Perm. Supp., C.R.S. 1963, 40-5-2:

"Any person commits theft when he knowingly, (b)(i) obtains or exerts unauthorized control over anything of value; * * * and (c)(iii) and uses, conceals or abandons the things of value intending that such use, concealment, or abandonment will deprive another permanently of such use or benefit."

Defendants argue under the common law, checks were not

the subject of larceny and can only be made so by specific statutory provision. Since 40-5-2 does not refer specifically to checks, they contend that the common law definition must apply. C.R.S. 1963, 135-1-1.

■■ Defendants' argument ignores the fundamental rule of statutory construction that the legislative intent is to be ascertained and given effect. *People v. Sneed,* 183 Colo. 96, 514 P.2d 776. The legislature expressly stated its intent in the statute itself.

"[I]t is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, [larceny, stealing, embezzlement (except embezzlement of public money), false pretenses, confidence game, and shoplifting] thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes. 1967 Perm. Supp., C.R.S. 1963, 40-5-2(4)."

Prior to the enactment of the 1967 theft statute, larceny included "taking of any bond, bill, note, receipt, or anything in writing of value to the owner." C.R.S. 1963, 40-5-2. And under prior case law, we have held that a check can be a thing of value proscribed by the larceny statute. *Updike v. People,* 92 Colo. 125, 18 P.2d 472. We see no reason to suppose that the legislature intended to define the crime of theft or larceny more narrowly by the enactment of the 1967 theft statute.

■ In fact, there is no question but what the stolen checks were a "thing of value" within the meaning of the statutes as written. C.R.S. 1963, 155-1-202, 155-3-104.

■ As pointed out in the official comment to the Uniform Commercial Code adopted in Colorado:

"A negotiable instrument is the property of the holder. It is a mercantile specialty which embodies rights against other parties, and a thing of value." C.R.S. 1963, 155-3-419, comment 2.

Whether or not the checks were subsequently recovered and returned to the owner is, of course, irrelevant to the criminal liability for taking the instruments in the first instance. *Kelley v. People,* 166 Colo. 322, 443 P.2d 734.

## B.

Defendants contend that even if a check can be a "thing of value" within the meaning of the 1967 theft statute, the value of the stolen checks was not shown by the evidence. They argue that whether the value of the checks is measured (1) by the cost of Empire Supply of replacing them or (2) the market value of the checks, there is not sufficient evidence to allow their convictions for felony theft to stand.

As we held in *Henson v. People,* 166 Colo. 428, 444 P.2d 275, when a conviction for a higher grade offense turns on the value of the property taken, it is incumbent on the prosecution to prove the value of stolen property. However, in the instant case the evidence was sufficient to prove that the value of the checks, along with the stolen cash, was over $100.

We hold that the *prima facie* value of a check is its face value. *First National Bank v. Montgomery Cotton Co.,* 211 Ala. 551, 101 So. 186. This rule comports with the general rule that value in a theft case is market value, where market value is what a willing buyer will pay in cash to the true owner for the stolen item. *Maisel v. People,* 166 Colo. 161, 442 P.2d 399. Where a check is the thing to be valued, the willing buyer is normally the drawee bank. In the overwhelming majority of ordinary commercial transactions, the drawee bank will pay the face amount of the instrument, or the drawer will make good the instrument. *E. Fransworth & J. Honnold, Cases and Materials on Commercial Law,* 47-54 (2d ed. 1968). Therefore, we hold that the face amount of the instrument is presumptive evidence of its value. *See Felkner v. State,* 218 Md. 300, 146 A.2d 424; *State v. McClellan,* 82 Vt. 361, 73 A. 993. *See also* C.R.S. 1963, 155-3-419. Here, no evidence was produced to rebut the logical inference that Empire Supply was entitled to receive and would receive the face amount of the checks. In fact, the evidence indicates that Empire Supply ultimately cashed the checks for their face amount.

Defendants' contention that the restrictive endorsement makes the check valueless on the open market is

also without merit. The value of the thing lost is not limited to what the thief could realize on the instrument. As we pointed out above, the loss is measured by what the owner could expect to receive for the instrument. The restrictive endorsement is only for the protection of the endorser and does not lessen the value of the check in any way. *See* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 507-9 (1972). The instrument is still negotiable, C.R.S. 1963, 155-3-206, and the procedural rights for collection purposes are not destroyed. Furthermore, we see no reason why the holder, prior to negotiation, could not void his own restrictive endorsement. Therefore, we hold that, for the purposes of valuing stolen checks, the restrictive endorsement is irrelevant.

II.

Secondly, defendants contend that the evidence was insufficient to allow the case to go to the jury and, therefore, the trial court erred in failing to direct a verdict of acquittal. Defendants were convicted of felony theft on the theory that they were accessories before the fact, C.R.S. 1963, 40-1-12. The statute provides that:

"An accessory is he who stands by and aids, abets or assists, or who, not being present, aiding, abetting or assisting, has advised and encouraged the perpetrator of the crime. He who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly . . . ."

The evidence shows that the principal, Joseph Marques, committed the crime of felony theft. The defendants testified to being with the principal immediately prior to the crime and, in effect, aiding the principal's escape and harboring him from the police. On appeal, they admit that such behavior could be culpable under accessory *after* the fact, C.R.S. 1963, 40-1-13. However, their contention is that there is no evidence that they had any knowledge of the felonious intent of Joseph prior to the commission of the crime nor the requisite intent to aid the principal in his commission of felony theft. Furthermore, they contend, all

the evidence inculpating the defendants is entirely circumstantial. Therefore, "the evidence must be consistent with guilt and inconsistent with any reasonable hypothesis of innocence." *People v. Calise,* 179 Colo. 162, 498 P.2d 1154.

As we have so often held, when the sufficiency of the evidence is challenged on appeal, this court reviews the evidence in the light most favorable to the prosecution and will not "set aside a verdict because it might have drawn a different conclusion from all the evidence." *People v. Vigil,* 180 Colo. 104, 502 P.2d 418. The only question before us is whether a jury could reasonably conclude that "the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt." *People v. Bennett,* 183 Colo. 125, 515 P.2d 466. It makes no difference "whether the evidence is direct or circumstantial." *People v. Bennett, supra.*

Under its theory of the case, the prosecution must prove that (1) the principal committed the crime of felony theft, (2) the accessories had knowledge that the principal intended to commit the crime, and (3) having this knowledge, the accessories did in fact aid or encourage, with the specific intent to so aid or encourage, the principal in the commission of the crime. *Vigil v. People,* 174 Colo. 164, 482 P.2d 983; *Medina v. People,* 168 Colo. 255, 450 P.2d 662; *Stewart v. People,* 161 Colo. 1, 419 P.2d 650; *McKenna v. People,* 124 Colo. 112, 235 P.2d 351; *Bacino v. People,* 104 Colo. 229, 90 P.2d 5; *Mulligan v. People,* 68 Colo. 17, 189 P. 5.

In the instant case, if the jury had chosen to believe the defendants' account of the episode, then they would not be guilty as principals. However, as the verdict indicates, the jury chose to disbelieve their testimony and to adopt the People's theory of the case. The jury could have inferred that defendants knew of the principal's intention from the following facts. They stopped the car in a rather out-of-the-way place where none of the three had any apparent purpose. They waited for the principal to return to the car. When he ran from the supply company, Maldonado sought to protect him from his pursuers and as he reached the car, Leroy

Marques immediately made a U-turn and left the scene. When they were arrested, they lied to the police in an obvious attempt to disassociate themselves from the crime. While the evidence of prior knowledge is circumstantial, it is enough for the jury to conclude that defendants knew of the principal's felonious intent before he entered the supply company and by waiting to help him in his escape, they aided him in the commission of the crime. *See Whitman v. People,* 161 Colo. 110, 420 P.2d 416.

Accordingly, the judgments are affirmed.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON concur in part and dissent in part.

MR. JUSTICE ERICKSON concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority opinion which holds that the value of a restrictively endorsed check is to be determined by its face amount for purposes of the Colorado Theft Statute, 1967 Perm. Supp., C.R.S. 1963, 40-5-2.

The theft statute requires that something of value must be taken. 1967 Perm. Supp., C.R.S. 1963, 40-5-2. The restrictively endorsed checks which were stolen in this case represented indebtednesses to Empire Welding Supply Company arising from sales transactions. Until the checks were presented for collection, the indebtedness was still outstanding, and Empire Welding Supply Company retained the right to enforce the debt obligation. C.R.S. 1963, 155-2-511(3). The fact that the checks were stolen does not in any way affect the underlying debt obligation. In fact, C.R.S. 1963, 155-3-804 specifically recognizes that the theft of checks which represent the payment of an obligation is not a taking of the obligation itself. Thus, even if the checks involved in this case had not been restrictively endorsed, Empire still retained the right to recover the indebtedness represented by the checks. Therefore, even if it is assumed that the stolen checks represented the loss of some value to Empire, it must be conceded that the amount of that loss is not necessarily equal to the face amount of the checks.

The majority opinion, however, overlooks these provisions

of the Colorado Uniform Commercial Code and focuses its attention upon a tortured view of market value and a misinterpretation of C.R.S. 1963, 155-3-206, which deals with the negotiability of a restrictively endorsed check.

The majority correctly recognizes that market value is defined as the amount which a willing buyer will pay to the true owner of an item which has been stolen, but then ignores the fact that a market must exist for the item before it can have a market value. In *Maisel v. People,* 166 Colo. 161, 442 P.3d 399 (1968), and *Lee v. People,* 137 Colo. 465, 326 P.2d 660 (1958), we recognized that market value related to that price which an item would bring on an open market prior to the time it was stolen. If there was no open market for the item prior to the time it was stolen, then no market value existed, and its value for purposes of the theft statute must be established in another manner. Under various provisions of the Colorado Uniform Commercial Code (C.R.S. 1963, 155-1-1, *et seq.*), which relate to checks and other negotiable instruments, it is clear that a check which carries the restrictive endorsement "For Deposit Only" would not be marketable until the restrictive endorsement was either fulfilled or voided. As a result, the stolen check's value for purposes of the theft statute could not be determined by its face amount.

A check which is made payable to bearer or to a named individual and endorsed by that individual is freely negotiable by any person in possession of the check. As a result, it has an open market value which is equal to its face amount. A check which is restrictively endorced "For Deposit Only," on the other hand, is not freely negotiable by any person in possession of the check. In fact, even the named payee of the check who has placed the restrictive endorsement on the check may not freely negotiate the check to any other person until the restrictive endorsement is fulfilled or voided. C.R.S. 1963, 155-3-206(3) provides, in part:

"(3) [A]ny transferee under an indorsement which is . . . 'for deposit' . . . must . . . apply any value given by him for or on . . . the instrument consistently with the indorsement . . . ."

In this case, since the stolen checks all contained the restrictive endorsement which, at the time of the theft, had not been fulfilled or voided, the checks were not negotiable until the depository bank presented the checks to the drawee bank for collection and credited Empire's account. The majority's statement that "the instrument is still negotiable" is incorrect in that respect, or at least misleading. Although C.R.S. 1963, 155-3-206(1) does state that "no restrictive indorsement prevents further transfer or negotiation of the instrument," that provision must be read in *pari materia* with the other portions of the Uniform Commercial Code. *Camden v. People,* 184 Colo. 131, 518 P.2d 1172; *State v. Beckman,* 149 Colo. 54, 368 P.2d 793 (1961); *In re Thomas,* 16 Colo. 441, 27 P. 707 (1891). When C.R.S. 1963, 155-3-206(1) is considered along with C.R.S. 1963, 155-3-206(3), it becomes readily apparent that the instrument is further negotiable only after a second or successive endorsement is placed on the instrument indicating that the restrictive endorsement has been fulfilled or voided. *See* C.R.S. 1963, 155-3-206, comment 3.

In this case, the only second or successive endorsement which would allow the restrictively endorsed checks to become further negotiable was an endorsement by Empire's depository bank. At the time the checks were stolen, there was no second endorsement on the checks. They were not negotiable. Since the checks were not negotiable at the time they were stolen, there would have been no buyer willing to "buy" the checks for their face amount, and therefore, they did not have a value equal to their face amount.

In my view, the restrictive endorsement on all of the checks taken in this theft is far from being irrelevant to the value of the thing taken. As a result, I would hold that the face amount of a check which is restrictively endorsed "For Deposit Only" does not represent the value of the thing taken for purposes of the Colorado Theft Statute.

Accordingly, I would affirm Marques' conviction, but remand to the trial court for instructions to vacate the sentence imposed and to resentence Marques for theft of

property valued at an amount less than $100, since there was no evidence of value of the checks apart from their face amount.

JUSTICE DAY has authorized me to say that he joins me in this dissent.