600 So.2d 957 (1992)
Donald W. MEDLEY
v.
STATE of Mississippi.
No. 89-KA-0020.
Supreme Court of Mississippi.
May 27, 1992.
Rehearing Denied July 1, 1992.
*958 Kim T. Chaze, Hattiesburg, for appellant.
Michael C. Moore, Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BANKS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Donald Medley was indicted, tried and convicted in the Circuit Court of Forrest County, Mississippi for embezzlement and was sentenced to ten years in the custody of the Mississippi Department of Corrections. He has appealed to this Court and assigns eight (8) issues for decision.

FACTS
The Appellant, Donald Medley, was employed as an associate attorney in the law firm of Holmes & Dukes located in Hattiesburg, Mississippi. He had worked for Dukes for about six (6) years when the alleged embezzlement occurred. It centered around a check that was sent to Dukes in payment for legal services provided.
Dukes represented a company out of Birmingham, Alabama, named Engel Realty Corporation. Engel was interested in making an addition to the present Cloverleaf Mall in Hattiesburg. However, in order for that to occur, it required changing certain zoning ordinances, and it hired Dukes to do the legal work. This relationship lasted a while, with Dukes sending Engel a bill every eight months or so. When the zoning was complete, Dukes sent Engel a final bill in the amount of $16,000.00. While talking with a representative of Engel on the phone one day, Dukes mentioned that he had not received their check. The representative from Engel was surprised, since the check had been mailed a while back. Dukes was told that a new check would be issued and sent by Federal Express. The second check arrived the next day. Dukes subsequently deposited it into the firm's general account at Trustmart Bank.
As fate would have it, the original check was delivered to the Dukes law office a few days later. Apparently, a new post office was being opened, and mail was often delayed. When the original was received, Dukes called Engel to ask what they wanted him to do with it. He was instructed to put it in Engel's file, and was *959 told that a stop payment order had been placed on the original check.
Almost a year later, on July 3, 1987, while the office was closed, Medley took the $16,000.00 check, which was made payable to James K. Dukes, endorsed it with "for deposit only" and deposited it into an account bearing his own name. When he was at the bank, the teller inquired about the improper endorsement, but was told that Dukes had given the check to Medley. The teller stated that she had known Medley for over a year because he would come in to make deposits to his account and sometimes would make a deposit to the firm's account and that she trusted him. Somehow the check was paid by Engel's bank, and it came to Engel's attention on Friday, August 7, 1987. Dukes was called that day and was asked what the "deal" was. Upon learning that Medley had deposited it in his own account some 33 or 34 days earlier, Dukes, his son, who also works there, and Mr. Martin, who does some investigatory work for the firm, confronted Medley at the office on Sunday, August 9, 1987.
When asked about the check, Medley, visibly shaken, said that he had wanted to talk to Dukes about that earlier. He said that he had been trying to catch Dukes to tell him the story behind it but never could, since Dukes was always out of the office. Medley claimed that the check was in the office manager's desk, and had been all that time. He stated that another employee had asked him to talk with the office manager, Genie Hamilton, who had worked for Dukes during the last 17 years. The employee was concerned that Genie was drinking too much and that it was affecting her work, as evidenced by the stack of checks in her desk. Medley claimed that he deposited the check in question into his own account so that Genie would not get into trouble with Dukes for not depositing it earlier. Medley further stated that the account into which he deposited the check was a business account which he used for some of his rental property and that account's statement was also mailed to the office.
Dukes told Medley that he expected him to repay Engel Realty and to explain what he had done. Dukes also said that if he didn't, the firm was going to have to repay it. On August 12, Medley wrote a check payable to Engel for the $16,000, with the law firm as the payor. Upon seeing this, Dukes told Medley to cross out the law firm's name and put his own, since it was not the law firm that cashed the check. Reluctantly, Medley complied. Dukes then notified the District Attorney's office and fired Medley.
At the trial, Dukes stated it was office policy that the office manager, Genie Hamilton, make the deposits and balance the accounts. At times, the other clerical employees in the office would make the deposits, as the bank was across the street. Dukes did testify that he would sometimes make deposits, if he was going to the bank, in order to save the clerical employees a trip. Further, Dukes stated that no one had authority to go in the file and to deposit the check, not even himself. He also said that there were many times that Medley could have told him about the deposit within the 33 or 34 days after the check was paid.
Genie Hamilton testified at trial that as far as she knew, the check in question was in the Engel Realty file where it was supposed to be, and not in her desk. Also, she stated that all monetary transactions went through her and that all deposits were made into either the firm's trust account or its general operating account, but never into a personal account.

ISSUES

I. and II.

DID THE APPELLANT HAVE A LEGAL RIGHT TO RECEIVE THE FUNDS IN QUESTION BY "VIRTUE OF HIS OFFICE OR EMPLOYMENT"?
Appellant was indicted under § 97-11-25 Miss. Code Ann. (1972), which provides:
"If any State officer or any county officer ... or any other person holding any public office or employment, or any ... *960 attorney at law ... or any other person undertaking to act or for others and intrusted by them with business of any kind, or with money, shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation, he shall ... be committed to the Department of Corrections for not more than twenty years, or be fined not more than five thousand dollars ($5,000.00)." (Emphasis supplied.)
The principle is well settled in this State that embezzlement is the wrongful conversion of property lawfully possessed by the person charged. Sisk v. State, 294 So.2d 472 (Miss. 1974). The question is raised and the appellant argues that he is not guilty of embezzlement for the reason that he did not lawfully possess the check. Therefore, the technicality should allow his acquittal.
In Lambert v. State, 518 So.2d 621 (Miss. 1987), a justice court judge was accused of embezzling money orders that were sent in to pay fines for traffic violations. The judge would then dismiss the charge and cash the check, keeping the money. The justice court judge argued that once the charges were dismissed, there was no money owed to the State that could legally come into his possession by "virtue of his office" which he could convert to his own use. This Court was not persuaded by that argument and held that the justice court judge lawfully came into possession of the mailed money by "virtue of his office" and the conviction was sustained.
Embezzlement differs from larceny in that it is the wrongful appropriation or conversion of property where the original taking was lawful or with the consent of the owner. Sisk v. State, 294 So.2d 472 (Miss. 1974). Larceny involves trespass and the felonious intent must exist at the time of such taking. Mahfouz v. State, 303 So.2d 461 (Miss. 1974); 29A C.J.S., Embezzlement, § 4 (1965).
Appellant was an associate and employee at the Dukes Law Firm. He had access to the files in the office and could lawfully inspect those files in the course of his work on that and on other cases in the office. That right to lawful access of files and other property in the office constructively put appellant into possession of the check in question. Cases such as the one at bar border on embezzlement and on larceny. We hold that under the facts of this case, the appellant was constructively in possession of the check by virtue of his employment and his indictment for embezzlement is valid.
Issues number one and two are rejected.

III. DID THE TRIAL JUDGE ERR IN DECLINING TO RECUSE HIMSELF?
For the answer to this issue, we look to the Mississippi Constitution, the statute and the Canons of Judicial Conduct. Article 6, § 165, of the Mississippi Constitution of 1890 provides:
"No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity of consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties ..."
There is no constitutional prohibition against this trial judge presiding over the case, since he is neither related to the parties nor has an interest in the case. Miss. Code Ann., Section 9-1-11 provides:
"The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity of consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties."
There is no reason under the statute for the trial judge to recuse himself, since it merely tracks the constitutional provision. Cannon 3(C)(1) of the Code of Judicial Conduct provides
"(1) A judge should disqualify himself in a proceeding in which his impartiality *961 might reasonably be questioned, including but not limited to instances where:
(a) he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding ..."
The appellant went to the home of the trial judge one afternoon, while the judge was painting his house. Appellant told the judge that he was leaving the law firm of Holmes and Dukes. The judge regarded that as a social call and remembered nothing about it, since he was busily engaged in his painting. Therefore, he denied the motion for recusal.
Canon 2 of the Code of Judicial Conduct states that a judge should avoid impropriety and the appearance of impropriety in all of his activities. The case at bar is distinguished from the cases of In re Moffett, 556 So.2d 723 (Miss. 1990) and Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989). In those cases, this Court held that the trial judge should have recused himself because both cases involved medical malpractice suits against Forrest General Hospital and in both cases the judge's brother was a partner in the firm which represented the hospital. Also, the record indicated that the hospital "got him (judge) elected" to the bench in the last election.
The case at bar is distinguished from the above cases. It was shown that the judge had known appellant for approximately nine years but there was no indication of any bias or prejudice for or against the appellant. The entire record of this case does not indicate any such bias or prejudice and reflects that the appellant received a fair trial. We note that in many areas, particularly rural areas, where judges have known practically all the people for many years, if such were a disqualification, the judge could never preside on most cases.
The issue is rejected.

IV. THE $16,000 CHECK IN QUESTION HAD "VALUE" AND WAS SUBJECT TO EMBEZZLEMENT.
Appellant contends that the check was of no value since it was stale and had a stop payment order placed upon it. Section 75-4-404 of the Miss. Code Ann. (1972), provides that just because a check is classified as stale, i.e., six months old, does not mean that a bank cannot cash the check. In Bell v. State, 251 Miss. 511, 170 So.2d 428 (1965), the Court held that credit cards described in the indictment were the property of the person, firm or corporation to whom they were issued and that they had value to the owner, although the value may have only been nominal. Other jurisdictions have held that the value of a negotiable check has been defined as the amount for which it is drawn. Examples follow:
The value of a negotiable check has been defined as the amount for which it is drawn. State v. Evans, 669 S.W.2d 708, 711 (Tenn. Crim. App. 1984). See State v. McClellan, 82 Vt. 361, 73 A. 993 (1909) (check payable to holder, though unendorsed, could be the subject of larceny, and its value would be the amount it represented); Bigbee v. State, 173 Ind. App. 462, 364 N.E.2d 149 (1977) (value of check made payable to cash is that amount written on its face); People v. Marques, 184 Colo. 262, 520 P.2d 113 (1974) (prima facie value of a check is its face value). "The value of a check is usually held to be the amount for which it is drawn, but, if the check is worth less than that amount, its actual or market value seems to be the determinative factor." 52A C.J.S., Larceny § 60(2)(b).
Appellant argues that the check had no value, yet he negotiated the same and received the $16,000 face value for it. The issue is rejected.

V. WERE THE STATE'S JURY INSTRUCTIONS ABSTRACT AND INACCURATE STATEMENTS OF LAW AND FACT?
The appellant objects to the following instruction, S-5, granted to the State:
"The Court instructs the jury that intent implies purpose to do an act."
The instruction although abstract, has been approved by the Court on previous occasions and is patterned after Mississippi *962 Model Jury Instruction 104.17. See Jones v. State, 172 Miss. 597, 161 So. 143 (1935).
Appellant also contends that the lower court erred in granting its instruction S-4 which states:
"The Court instructs the jury that the value of a check shall be deemed to be the value of the money transferred or affected thereby."
The language used in the jury instruction is taken directly from the statute. The instruction did not mislead or confuse the jury and was supported by the evidence.
Appellant next contends that the lower court erred in refusing Instruction D-2 requested by the appellant.
"The Court instructs the Jury that if you can view the evidence upon any reasonable accounting consistent with Mr. Medley's innocence, it is your sworn duty as jurors in this case to find Mr. Medley `not guilty'".
The instruction is classified as a "two-theory instruction." Such an instruction is given only in circumstantial evidence cases and it was properly refused. See Johnson v. State, 347 So.2d 358 (Miss. 1977); Bullock v. State, 391 So.2d 601 (Miss. 1980).
Last, appellant contends that instruction D-4 should have been given. It follows:
"The Court instructs the Jury that if you are not convinced beyond a reasonable doubt that Jim Dukes and Engel Realty Company lost anything of value as a result of the acts of Mr. Don Medley; then, it is your sworn duty as Jurors in this case to return a verdict in favor of Mr. Don Medley."
Further, appellant objects to S-1 because it does not track the indictment word for word. There is no merit to these objections. The instruction D-4 is cumulative of other instructions given to the appellant and there is no merit in the objection to S-1. The jury was properly instructed, considering all instructions together, and the lower court did not commit reversible error in either giving or refusing instructions.
The issue number five is rejected.

VI. WAS THERE A CRIME AND A VICTIM?

VII. DID THE APPELLANT'S RIGHT TO TESTIFY INCLUDE THE RIGHT TO DO SO IN NARRATIVE FORM?
We have carefully reviewed the record relating to the above two issues and we find no merit in them.
Therefore, the issues are rejected.

VIII. DID THE LOWER COURT ERR IN NOT DECLINING TO ORDER A NEW PRE-SENTENCING REPORT?
The Appellant contends that the lower court should have ordered a presentence report before sentencing him. He cites Rule 6.02 of the Uniform Criminal Rules of Circuit Court Practice which states:
"Upon acceptance of a plea of guilty, or upon a finding of guilt, and where the Court has discretion as to the sentence to be imposed, the Court may direct the presentence investigator to make a presentence investigation and report".
Rule 6.02, Unif.Crim.R.Civ.Ct.Prac. (Emphasis added).
The rule is permissive rather than mandatory and the use of the presentence report is solely in the trial judge's discretion. This is not a case in which the trial judge attempted to enter upon the presentencing procedure and failed to comply with it. He stated into the record that he was familiar with this defendant, his background, attributes, his standing in the community, and that he was sufficiently informed to proceed at this time with sentencing. The maximum statutory sentence is twenty years and the judge imposed a ten year sentence, or one-half the maximum. The trial court will not be held in error or to have abused its discretion, if the sentence imposed is within the limits fixed by statute. Johnson v. State, 461 So.2d 1288 (Miss. 1984).
The issue is rejected as being without merit.
*963 There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
CONVICTION OF EMBEZZLEMENT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
SULLIVAN, J., not participating.