William R. JEFFCOAT, Appellant,

v.

UNITED STATES, Appellee.

No. 86–795.

District of Columbia Court of Appeals.

Argued Nov. 19, 1987.
Decided Sept. 28, 1988 *.

---

* The disposition in this case was originally issued as a Memorandum Opinion and Judgment on September 28, 1988, and is being published upon the court's grant of appellee's motion to publish.

Marlon S. Charles, appointed by this court, with whom Adrian R. Prince was on the brief, for appellant.

John M. Seabright, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, Michael W. Farrell, Mary Ellen Abrecht, Mary E. McLaren and Anita J. Stephens, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK and STEADMAN, Associate Judges, and REILLY, Senior Judge.

PER CURIAM:

Appellant was found guilty after a bench trial of the offense of taking property without right in violation of D.C.Code § 22–3816 (1988 Supp.).[1] The court imposed the maximum sentence—90 days' imprisonment. Appellant urges two grounds for reversal:[2] (1) the evidence presented at trial was insufficient to establish that the check had "value," and (2) an inconsistency between the date of the offense, as set forth in the information, and the date mentioned in the trial testimony subjects him to double jeopardy. Finding no merit in either contention, we affirm.

## I

The facts are not disputed. Gillian G. Thompson was attempting to park her car near her residence when she accidentally hit a parked automobile. Appellant, who was standing nearby, exclaimed "you hit my car!" Believing him to be the owner of the parked vehicle, Thompson proposed an immediate settlement after appellant agreed that $150 would suffice to secure the necessary repairs. Although appellant wanted cash, Thompson drew and handed him a check for $150 promising to redeem the check in currency if appellant was unable to cash it.

Upon reflection, Thompson called the police department the next day to verify appellant's claim to ownership of the damaged vehicle. Learning that the car was not registered in his name, she ordered her bank to stop payment on the check. When appellant presented the check for payment at the main office of the drawee bank, the bank refused payment.[3] Appellant telephoned Thompson, and was instructed to go to the branch office of the bank where she maintained her checking account.

Thompson then rang the police who encouraged her to "go along" with appellant. When appellant soon after phoned from the branch office to say that the bank would not honor the check, Thompson invited him to come to her house that evening to get the money. Unbeknownst to appellant, she had also arranged for an undercover police officer to be present posing as a close friend. When appellant arrived and presented the check expecting cash, the officer identified himself and placed appellant under arrest.

## II

██ To establish a defendant's guilt for taking property without right under D.C.

---

1. The statute provides, in pertinent part:
   **§ 22–3816. Taking property without right.**
   A person commits the offense of taking property without right if that person takes and carries away the property of another without right to do so....

2. Appellant's tangential argument that the trial court found he took a security interest in the check is belied by the record.

3. It is unclear whether the main branch refused to honor the check because of the stop payment order, or because Thompson did not have a signature card on file against which the bank could verify her signature.

Code § 22–3816, "the government must prove that the defendant (1) took and (2) carried away (3) the property of another, as defined in [D.C.Code §] 22–3801, (4) without right to do so." *Tibbs v. United States,* 507 A.2d 141, 144 (D.C.1986). The third element of the offense requires reference to other sections of the D.C.Code. "Property of another" is defined, in pertinent part, as "any property in which a ... person other than the accused has an interest which the accused is not privileged to interfere with or infringe upon without consent...." D.C.Code § 22–3801. "Property" is defined as "anything of value" including but not limited to "[t]angible or intangible personal property." *Id.* § 22–3801(3)(B). "Anything of value" is defined as "not only things possessing intrinsic value, but bank notes ... and other writings which represent value." *Id.* § 22–102 (1988 Supp.).

Appellant contends that the evidence was insufficient to sustain his conviction because no proof was offered to show that the check was a thing of "value." Specifically, he argues that, because no evidence was offered to show that Thompson's bank account contained sufficient funds to cover the check, and because he never received any cash for it, the instrument had no "value." We disagree.

■ In trials where the illegal taking or possession of a piece of property is an issue, to establish "value," the government need not prove the item's specific monetary worth. *See Leftridge v. United States,* 410 A.2d 1388, 1391 n. 6 (D.C.1980) (in petit larceny cases, government need not establish exact monetary value of items taken); *Jones v. United States,* 345 A.2d 144, 145 (D.C.1975) (in receiving stolen property cases, no need to show actual market value of item); *but cf.* D.C.Code § 22–3812 (1988 Supp.) (requiring showing that fair market value of property obtained is more or less than $250 to differentiate between degrees

of theft). Rather, it only need show that the item had some value—" 'any value at all, although less than the smallest coin.' " *Jones, supra,* 345 A.2d at 145–46 (citations omitted).

■ We have held that the value of an item is to be determined by its "useful functional purpose." *Jenkins v. United States,* 374 A.2d 581, 586 n. 9 (D.C.1977) (citing *Paige v. United States,* 183 A.2d 759 (D.C.Mun.App.1962), *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 182 (1977)). When appellant received the check from Thompson, its useful functional purpose was to enable him to acquire $150 in cash.[4] That no direct evidence was introduced at trial showing the balance of the account when the check was drawn does not alter this conclusion.

■ Even assuming *arguendo* that the account lacked sufficient funds to cover the check, the instrument would still have had value. Appellant could have endorsed the check and passed it to a third party in exchange for cash, goods or services; or, if the check was dishonored, could have sued Thompson for the face amount. Therefore, the check obviously had *some* degree of value within the meaning of the statute.

■ The fact that appellant never received the check's cash equivalent because of the stop-payment order does not affect this conclusion. The value of property is determined at the time the crime through which it is acquired occurs. *Malloy v. United States,* 483 A.2d 678, 680 (D.C. 1984); *United States v. Paulino,* 717 F.2d 1276 (9th Cir.1983). Appellant committed the crime of taking property without right at the instant he tricked Thompson into delivering her check to him. Hence, the subsequent stop-payment order that prevented him from realizing the fruits of his crime is of no consequence—the crime was

---

4. According to the weight of authority in other jurisdictions, the "value" of a negotiable check is the amount for which it is drawn. *See State v. Evans,* 669 S.W.2d 708, 711 (Tenn.Crim.App. 1984); *Bigbee v. State,* 173 Ind.App. 462, 364 N.E.2d 149 (1977); *People v. Marques,* 184 Colo.

262, 520 P.2d 113 (1974) (en banc); Wharton's Criminal Evidence § 86 (C. Torcia 13th ed. 1972 & 1988 Supp.); 52A C.J.S. *Larceny* § 60(2)(b) (1968 & 1988 Supp.); *cf. Christiansen v. State,* 575 S.W.2d 42, 44 (Tex.Crim.App.1979) (value of money order is determined by its face value).

complete.[5] *See Bigbee, supra* note 4, 173 Ind.App. at 467, 364 N.E.2d at 153.

 Appellant's second argument for reversal, based solely on a seeming variance between the information alleging the commission of the offense "on or about" December 17, 1985, and the evidence showing that such conduct occurred on the 18th of that month, borders on the frivolous. Plainly, this discrepancy in dates did not deprive him of any Fifth Amendment rights. The trial record shows that appellant was fully aware of the events consisting of the charges against which he was defending. The thesis that he might be subjected to a second prosecution for a crime occurring on the date specified in the information is far fetched, for the transcript of the trial was "sufficiently detailed to preclude a second prosecution for the same offense." *See Craig v. United States,* 490 A.2d 1173, 1177 (D.C.1985).[6]

AFFIRMED.

---

5. *Fussell v. United States,* 505 A.2d 72 (D.C. 1986), is clearly distinguishable. In *Fussell,* the accused offered to sell a Metro "flash pass" to a transit officer. The latter, realizing the pass was a forgery, gave the accused ten dollars for it, and then arrested him. We reversed his conviction, holding that there cannot be a taking of property without right where the property —*i.e.,* the $10 bill—is voluntarily surrendered, because "the essential element of lack of consent was missing."

Here, the consent evinced by Thompson in voluntarily handing the check to appellant is of no significance. To be valid, consent must be informed and not the product of trickery, fraud, or misrepresentation. *See Farlow v. State,* 9 Md.App. 515, 265 A.2d 578 (1970) (consent obtained by fraud is the same as no consent); *see Baggett v. United States,* 528 A.2d 444, 445 (D.C. 1987) (appellant guilty of taking property without right when he exceeded consent granted by employer).

6. *See* Criminal Jury Instructions for the District of Columbia, No. 3:10 (3d ed. 1978). "It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged."