STATE OF NEBRASKA, APPELLANT, V. ALVIN G. LONG, APPELLEE.

516 N.W.2d 273

Filed May 17, 1994. No. A-93-536.

Gary E. Lacey, Lancaster County Attorney, and Patrick F. Condon for appellant.

Dennis R. Keefe, Lancaster County Public Defender, and Scott P. Helvie for appellee.

HANNON and MILLER-LERMAN, Judges, and NORTON, District Judge, Retired.

MILLER-LERMAN, Judge.

## INTRODUCTION

The State was granted leave to docket an appeal pursuant to Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 1992) in order for this court to consider the issue of the method by which to value stolen checks for grading purposes in a theft case. Under the facts of this case, we conclude that where the evidence shows that a check has been accepted in commerce, the face amount of the check is proof of value for grading purposes.

## STATEMENT OF FACTS

On July 14, 1992, shortly before midnight, Alvin G. Long entered Joe's Off Sale, a package liquor store, and requested two cases of beer. A few minutes after Long entered the store, Diana Behrens, the store manager, entered Joe's Off Sale to start the closing procedures. Long exited Joe's Off Sale to get more money and returned a few minutes later. Toni LaCour, the clerk working at Joe's Off Sale, ultimately ended up voiding the transaction because Long did not have enough money.

Behrens began her closing procedures, getting checks, a $50 bill, and a paid-out receipt from underneath the cash register drawer and binding them together with a rubberband. Behrens

did not go any further with the closing procedures because Long was still in the store and wanted to shop around. Behrens placed the check bundle underneath the counter. Behrens instructed LaCour to go to the lounge area to attend to the other customers.

As Behrens waited, Long brought some wine to the counter and told Behrens that he wanted a cold bottle. Behrens then went into the walk-in cooler two separate times to retrieve what Long requested. As she returned from her last trip to the cooler, Behrens noticed the bundle of checks and cash was missing from underneath the counter. Long then started toward the door, whereupon Behrens ran after him, telling him to bring back the checks. Long was subsequently arrested and later charged with the theft of the checks, $50 cash, and a bottle of cognac taken from Joe's Off Sale. Specifically, the information charged Long with theft of property valued at more than $500 but less than $1,500, in violation of Neb. Rev. Stat. § 28-511(1) (Reissue 1989). Long was also charged with being a habitual criminal, in violation of Neb. Rev. Stat. § 29-2221 (Reissue 1989).

At trial, testimony was given by employees of Joe's Off Sale that all the checks received by Joe's Off Sale on July 14, 1992, were received by Joe's Off Sale in exchange for either merchandise or cash. The checks which were recovered from Long were received into evidence. The aggregate amount of all checks received during trial totaled $639.11.

At the close of the State's case, Long moved to dismiss the information, claiming the State had failed to present a sufficient prima facie case of Long's guilt, and in the alternative requested a dismissal with respect to the allegation that Long had stolen property that was valued at more than $500 on the basis that the State had not made a prima facie case that the value of the property taken exceeded $500. The trial court refused to dismiss the case, but concluded that the evidence failed to support the State's case of theft over $500. The court indicated that the case would be submitted to the jury and that the jury would be asked to determine whether Long was guilty of the offense of theft of property of between $200 and $500, or under $200.

In denying the motion to dismiss, the court cited *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992). The trial court expressed concern that there was the possibility that the checks could be based on insufficient funds; that the checks were difficult for Long to negotiate because of a lack of endorsement; and that, with the exception of a U.S. Treasury check, the checks stolen from Joe's Off Sale lacked value or there was inadequate evidence of value.

The State objected and argued that the evidence showed the checks were given to Joe's Off Sale in exchange for either merchandise or cash, in amounts equal to the face value of the checks, thus establishing value equal to the face amount of each check. Relying on Neb. Rev. Stat. § 29-2026.01 (Reissue 1989), the State argued that the jury should determine the value of the property stolen. Again, relying on § 29-2026.01, the State objected to the format of the verdict forms. It argued that there should be two forms, one for a verdict of not guilty and another for a verdict of guilty with space in which the jury could supply a dollar amount for the value of the stolen items.

The State's objections and requests in connection with the form of verdict were overruled, and the trial court submitted three verdict forms to the jury. The first form stated that Long was not guilty. The second form stated that Long was guilty and that the value of the property stolen was $200 or less. The third form stated that Long was guilty and that the value of the property stolen was more than $200. In instruction No. 4, the trial court told the jury that in order to find Long guilty of theft, the State must prove, inter alia, that the value of the property taken was either more than $200, or $200 or less. Following deliberations, the jury found Long guilty of theft of property with a value of more than $200.

The State sought and was granted leave to docket an appeal pursuant to § 29-2315.01. The State assigns three errors as follows: (1) The district court for Lancaster County erred in ruling that a check written to an individual has no value until presented to the issuer's bank, (2) the district court for Lancaster County erred in giving jury instruction No. 4, and (3) the district court for Lancaster County erred in giving the verdict forms which did not allow the jury to determine the

amount of the property stolen.

## ANALYSIS

Long was charged with theft of property, the value of which is greater than $500 but less than $1,500, see § 28-511(1) and Neb. Rev. Stat. § 28-518 (Cum. Supp. 1992), and with being a habitual criminal, see § 29-2221. Section 28-511(1) provides as follows: "A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." Pursuant to § 28-518(2), theft is graded as a Class IV felony "when the value of the thing involved is five hundred dollars or more, but not over one thousand five hundred dollars." Where the value of the thing involved is more than $200 but less than $500, the theft constitutes a Class I misdemeanor. § 28-518(3).

The State argues on appeal that the face amount of the stolen checks is sufficient evidence of their value and that the evidence in this case establishes value in excess of $500. The State further argues that, to the extent that value must be established by a relevant marketplace transaction under *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), the evidence shows that the checks had been tendered and received in the relevant market in an amount equal to their face value. Thus, because the amount of the checks exceeds $500, the State claims the trial judge erred in limiting the jury's consideration to amounts under $500 by its trial rulings and jury instruction. Long argues that the face amount of the checks is not proof that the value of the property involved is worth more than $500, primarily because the checks could not be negotiated by Long or might be based on insufficient funds.

The method by which to value instruments evidencing debt is a legal question. When deciding questions of law, this court is obliged to reach a conclusion independent of that reached by the trial court. *Plambeck v. Union Pacific RR. Co.*, 244 Neb. 780, 509 N.W.2d 17 (1993). The value of the property involved is not an element of the crime of theft, but is relevant to the grade of the offense and determines the penalty that may be imposed on conviction. *State v. Garza, supra.* "Although value is not an element of theft, the State must prove, by

evidence beyond a reasonable doubt, the value of the property that is the subject of the theft charge." *Id*. at 263, 487 N.W.2d at 556. It has been held that "[t]he determination of the value of property stolen, upon a conviction of theft, is a question of fact to be determined by the jury." *State v. Weaver*, 237 Neb. 185, 186-87, 465 N.W.2d 470, 472 (1991). Specifically, pursuant to § 29-2026.01, it has been held that " '[i]n jury trials, the jury must find the value of the property taken and convey that fact to the judge in its verdict. . . .' " *State v. Pierce*, 231 Neb. 966, 972, 439 N.W.2d 435, 441 (1989).

The value of a stolen check, either endorsed or unendorsed, is not specifically defined by Nebraska statutes, nor is it the subject of Nebraska case law. We note that in a related area, Neb. Rev. Stat. § 28-611 (Cum. Supp. 1992) grades insufficient-fund checks based on the face amount of the checks. We are also aware of *State v. Reed*, 228 Neb. 645, 423 N.W.2d 777 (1988), where in a bench trial, although the trial court did not make a finding of value, it graded the offense in a range which was consistent with the face amount of a stolen check. In *Reed*, in its journal entry, the trial court found the defendant guilty of the crime charged in the information, which was theft of $1,750. The Nebraska Supreme Court concluded that a value of over $1,000 for grading purposes could be inferred and that it was not error for the trial judge to fail to find a specific amount. The issue of the value of stolen checks for grading-of-theft purposes in a jury trial appears to be one of first impression in Nebraska.

■ After thoroughly reviewing the literature in this area, we agree with the majority view from other jurisdictions that in a theft case, in the absence of a specific statutory directive determining value, the face amount of a stolen check which has been accepted in commerce is the value of the property stolen. E.g., *Jeffcoat v. U.S.*, 551 A.2d 1301 (D.C. 1988); *State v. Pacheco*, 636 P.2d 489 (Utah 1981); *People v. Marques*, 184 Colo. 262, 520 P.2d 113 (1974); *State v. McClellan*, 82 Vt. 361, 73 A. 993 (1909). See, also, 52A C.J.S. *Larceny* § 60(2) b. (1968). The courts in these cases reason that the instruments were valued by their rightful owners in the face amount of the checks, thus establishing value. The courts have generally held

that the face amount of a stolen check is its value, notwithstanding a restrictive endorsement such as "For deposit only." *People v. Marques, supra.* The courts elsewhere have further held that the face amount of a check at the time of the theft is its value, notwithstanding a subsequent stop-payment order imposed by the bank at the victim's direction. *Jeffcoat v. U.S., supra.* We are aware of a minority view, found primarily in Texas cases such as *Cooper v. State,* 509 S.W.2d 865 (Tex. Crim. App. 1974), which would require proof of the sufficiency of funds in the maker's account to determine the value of a stolen check, and we find these cases unpersuasive.

In the instant case, 14 checks were retrieved from a nearby roadway soon after the theft and were received in evidence at trial as proof of the theft. Nine checks in varying amounts totaling $135.05 were made payable to "Joe's" or "Joe's Off Sale." Of the five checks not made payable to the store, two checks left the payee blank, in the amount of $20.27 and $10, respectively. A third check, for $10, was made payable to "Cash." A fourth check, in the amount of $207.50, and a fifth check, a U.S. Treasury check in the amount of $256.29, had been endorsed by the payees without restriction. The face amounts of these five checks totaled $504.06.

At the conclusion of the State's case, Long moved to dismiss the case or, in the alternative, sought what was effectively a partial directed verdict that the crime charged should be reduced to theft under $500. The trial court did not dismiss the case, but indicated that it would submit the case to the jury to determine Long's guilt or innocence and, if guilty, whether the property taken was valued at between $200 and $500, or under $200. In ruling on Long's motion, the court concluded that the checks were not readily negotiable by Long and that, with the exception of the U.S. Treasury check, there was no proof or presumption that the checks were drawn on accounts with sufficient funds. We find the trial court's reasoning and rulings to be in error.

As noted above, the majority of courts have generally found that the face amount of a stolen check received in commerce, whether or not endorsed, is sufficient proof of its value, without regard to the sufficiency of funds. This principle has

been applied to government checks, *State v. Evans*, 669 S.W.2d 708 (Tenn. Crim. App. 1984) (face amount of unendorsed Internal Revenue Service refund check is presumptive evidence of its value), and *State v. Easton*, 69 Wash. 2d 965, 970, 422 P.2d 7, 11 (1966) (face amount of stolen U.S. Treasury check is proof of its value, notwithstanding subsequent stop-payment order, because the instrument "is perhaps the most negotiable of negotiable instruments"), and has also been applied to checks made payable to "Cash," *Bigbee v. State*, 173 Ind. App. 462, 364 N.E.2d 149 (1977) (face amount of stolen check made payable to "Cash" is evidence of its value). In the instant case, five checks were in payable-to-bearer form: two were without payees; one was payable to "Cash"; and two, one of which was a U.S. Treasury check, had been endorsed without restriction. These five checks were highly negotiable and totaled over $500. The trial court's concerns regarding ease of negotiation and value under $500 are inconsistent with this analysis. As noted above, the total of all 14 checks was $639.11.

The trial court and Long rely on *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), in arguing that the State failed to prove that the value of the stolen checks was over $500. In *Garza*, the Nebraska Supreme Court held that price tags alone were insufficient proof of the value of the stolen articles, which consisted of two jackets and two dresses. Under *Garza*, the State must offer evidence of the value in the marketplace of the property taken. In the instant case, we have concluded that the value of the checks, which the evidence shows had been received in commerce, was the face amount of the checks. The testimony in this case by two Joe's Off Sale employees was that all of the checks had been received by Joe's Off Sale for merchandise or cash in amounts equal to the amount of the checks. There was further testimony that before checks were accepted at Joe's Off Sale, employees checked the bad-check list kept by the store. If *Garza* is viewed as applicable to this case, this evidence satisfactorily comports with *Garza*'s requirement that there be proof beyond a reasonable doubt of current market conditions to establish value. In the instant case, the testimony supports the conclusion that the checks were accepted in the marketplace for value equal to their face amounts. The checks received in

evidence which were retrieved after the theft totaled $639.11.

## CONCLUSION

In view of the foregoing analysis and the evidence which supports a conclusion that the value of the stolen checks is over $500, we agree with the State that the trial court erred in effectively limiting the jury's consideration of value, in instructing the jury as described above, and in submitting a form of verdict which precluded a jury from making a specific finding of value and conveying that fact to the judge in its verdict. See, § 29-2026.01; *State v. Weaver*, 237 Neb. 185, 465 N.W.2d 470 (1991); *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989).

REVERSED.