BYRNES, Judge,
dissenting with reasons.
I respectfully dissent.
The majority would reverse the conviction for insufficient evidence of theft of items valued between one hundred dollars and five hundred dollars based on the finding that the face amount of the check could not be used, and the victim’s cost of changing her locks and placing stop payment orders on her-checks could not be considered as part of the value of the items stolen by her.
In State v. Lay, 93 1063 (La.App. 1 Cir. 5/20/94), 637 So.2d 801, writ denied 94-2525 (La.10/16/96), 680 So.2d 669, the appellate court found sufficient evidence of possession of a stolen thing valued at $100 or more, but less than $500 in violation of La. R.S. 14:69 based on the face value of a Louisiana income tax refund check which the defendant unsuccessfully attempted to cash.[1] In that case the check had the face value of $205 without a showing of whether the check had |2been endorsed.
In State v. Finley, 520 So.2d 1020 (La.App. 3 Cir.1988), writ denied 524 So.2d 516 (La. 1988), the appellate court found that there was sufficient evidence of theft of property having a value of over $500 based on the aggregate amount of checks and cash which were in a stolen purse.[2] In not allocating the amount of the checks and cash, the appellate court did not distinguish the two but found that: “The State presented evidence of all elements of the charged crime. Namely, they showed there was a misappropriation or taking of a purse containing $4,200.00 belonging to Mrs. Cashio [the victim] and it was done with the intent to deprive Mrs. Cashio *1004 permanently of the purse.” Id., 520 So.2d at 1022.
In State v. Nguyen, 584 So.2d 256 (La.App. 4 Cir.1991), writ denied 589 So.2d 1054 (La.1991), the defendant was convicted of theft by switching price tags on various garments. This court affirmed the conviction and noted that the evidence of the price tag switching showed that the defendant attempted to deprive the store (the victim) of the value of its merchandise.
In the present case, the defendant’s theft of the victim’s $161.50 State check deprived her of the value of that check. The value of the items stolen correctly included the face amount of the check because that was the check’s value to the victim.
Under 18 U.S.C. Sec. 2311, the National Stolen Property Act, the federal statute defines value as “face, par or market value, whichever is the greatest.”
In State v. Long, 2 Neb.App. 847, 850, 516 N.W.2d 273, 275 (Neb.App.1994), the Nebraska appellate court found that: “The issue of the value of stolen checks for grading-of-theft purposes in a jury trial appears to be one of first impression in Nebraska.” That court provided an analysis, including cases from various states. The Court stated that:
... Long [The defendant] argues that the face amount of the checks is not proof of the value of the property involved is worth more than $500, primarily because the checks could not be negotiated by Long or might'be based on insufficient funds.

Id.

In a related area the Court noted that Nebraska grades insufficient-fund checks based on the face amount of the checks under its statute, Neb.Rev.Stat. Sec. 28-611 (Cum.Supp.1992). Similarly, under La. R.S. 14:71, “issuing worthless checks”, Sections C, D, F, and G of the statute provide the graded sentences based on the face amount of the cheek or checks issued.
In Long, id., The Appellate Court of Nebraska concluded:
After thoroughly reviewing the literature in this area, we agree with the majority view from other jurisdictions that in a theft case, in the absence of a specific statutory directive determining value, the face amount of a stolen check which has been accepted in commerce is the value of the property stolen. E.g., Jeffcoat v. U.S., 551 A.2d 1301 (D.C.1988); State v. Pacheco, 636 P.2d 489 (Utah 1981); People v. Marques, 184 Colo. 262, 520 P.2d 113 (1974); State v. McClellan, 82 Vt. 361, 73 A. 993 (1909). See, also, 52A C.J.S. Larceny Sec. 60(2) b. (1968). The courts in these cases reason that the instruments were valued by their rightful owners in the face amount of the cheeks, thus establishing value. The courts have generally held that the face amount of a stolen check is its value, notwithstanding a restrictive endorsement such as “For deposit only.” People v. Marques, supra. The courts elsewhere have further held that the face amount of a check at the time of the theft is its value, notwithstanding a subsequent stop-payment order imposed by the bank at the victim’s direction. Jeffcoat v. U.S., supra. We are |4aware of a minority view, found primarily in Texas cases such as Cooper v. State, 509 S.W.2d 865 (Tex.Crim.App.1974), which would require proof of the sufficiency of funds in the maker’s account to determine the value of a stolen check, and we find these cases unpersuasive.[3]

Id.

Although arguably a check is only made payable to the payee/payees, and has no value to anyone else, it still has value for that payee or those payees and is not worthless to everyone. In the present case, in taking the purse, the perpetrator specifically intended to permanently deprive the victim of her purse and its contents. The value of the contents is not what the perpetrator could obtain, but is the value that the victim had in it, including the face value of the stolen check.
*1005 In the present ease the majority also found that the trial court erred in allowing the victim to testify about the cost of changing her locks and placing a stop payment order on her check. However, BLACK’S LAW DICTIONARY, 1551 (6th ed.1990), states that:
Value as it relates to stolen property is the market value at the time and place of the taking, or, in case of property without a market value, the cost of replacing it.
Therefore, I would find that it was proper for the victim to provide testimony about the cost of replacing her locks and placing the stop payment order[4] under 15La. R.S. 14:2(2), which provides in pertinent part:
“Anything of value” must be given the broadest possible construction, including any conceivable thing of the slightest value .
Furthermore, the majority found harmless error where the trial court erred in allowing two other witnesses to testify about the defendant’s behavior at the group counseling session. The trial transcript shows that the trial court considered that the testimony was admissible under the doctrine of res gestae[5] where one witness said the defendant slept through the group session and annoyed her and others.
The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after the commission of the crime, but also the testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime if a continuous chain of events is evident under the circumstances. State v. Crawford, 95-1352 (La.App. 3 Cir. 4/3/96), 672 So.2d 197, writ denied, 96-1126 (La.10/4/96), 679 So.2d 1379.
In the present case, besides the testimony of the victim, the testimony of Paul Kennedy and Deontrenise Gibson was part of the continuous chain of events placing the defendant at the Community Service Center and the commission of the crime. Both of these witnesses’ testimony with respect to the group session showed that the defendant stood out in their memory and showed the reason why the two witnesses had the ability to clearly remember the defendant and to identify 16the defendant when they later saw him running down the stairs. I agree with the trial court that the testimony of Ms. Kennedy and Ms. Gibson was admissible under the res gestae exception.
Accordingly, I would affirm the defendant’s conviction.

. The defendant approached an employee in the rear of a mini-market and attempted to cash the State refund check in the amount of $205. When the defendant did not have any identification, the employee told the defendant that he would have to bring the check to the front of the store for approval before it could be cashed. The defendant went to the front of the store but the second employee refused to cash the check since she knew the defendant's name was Richard Lay and the name of the payee on the check was Terrell. She informed the defendant that Mr. Terrell would have to bring the check into the store himself with some form of identification. At this point, the defendant said nothing but left the. store with the check. The Terrells were contacted, and the defendant's arrest and conviction followed.

. The victim had just completed a bank deposit totalling $4,200 in cash and checks, had placed the deposit in her purse, and then put the purse on a chair in the office. The co-defendant took the purse while Finley diverted the victim’s attention by purchasing a product for 99 cents.

. In the present case the victim stated that the $161.50 was a State check for child support. From that testimony it can be concluded that the check had sufficient funds. However, I agree with the holding of Long, supra, which did not base the value of the check on whether or not it might be based on insufficient funds, but based the value on the face amount of the check.

. Although the testimony of the costs incurred was relevant and admissible, the face value of the stolen check by itself equaled an amount greater than one hundred dollars and less than five hundred dollars.

. La. C.E. art. 801(D)(4).