**Edward FORREST, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 509, 1997.

Supreme Court of Delaware.

Submitted: Nov. 4, 1998.
Decided: Jan. 6, 1999.

16. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Accord Burkhart v.*

*Davies*, Del.Supr., 602 A.2d 56 (1991).

 ██

Joseph A. Hurley, Wilmington, Delaware, for appellant.

Kim Ayvazian, Deputy Attorney General, Department of Justice, Georgetown, Delaware, for appellee.

Before WALSH, HOLLAND, and BERGER, Justices.

WALSH, Justice:

In this appeal from the Superior Court the appellant, Edward Forrest ("Forrest"), challenges his conviction, after a jury trial, of two felonies—Exploitation of an Infirm Adult and Theft. His principal claim of error concerns the admission under Delaware Rules of Evidence 803(3) of evidence relating to the existing state of mind of the alleged victim. Forrest contends that the admission of these statements violated his confrontation rights under both the Sixth Amendment of the United States Constitution and Art. I, § 7 of the Delaware Constitution. Additionally, Forrest asserts a double jeopardy claim, attacks the sufficiency of the evidence and complains of prosecutorial misconduct.

We find that the admission of the victim's statements pursuant to D.R.E. 803(3) and D.R.E. 403 was not an abuse of discretion by the Superior Court. We further find no merit in Forrest's contention that the limiting instruction regarding these statements was insufficient to obviate the risk of unfair prejudice. We hold that the exception to the hearsay rule for statements of a declarant's then existing state of mind, emotion, sensation or physical condition is a "firmly rooted" hearsay exception satisfying the requirement for Confrontation Clause purposes that such statements bear adequate indicia of reliability.

We also find no merit to Forrest's claims of double jeopardy, insufficiency of the evidence or prosecutorial misconduct. Accordingly, we affirm the judgment of the Superior Court.

I.

Forrest's convictions stem from an incident which occurred on December 1, 1994 involving Ivan Sebesan ("Ivan") who lived on Washington Avenue in Claymont, Delaware. Ivan was approximately eighty years old. His wife had died in 1992, and his two children lived out of state. There was testimony that supported a finding that Ivan was exhibiting symptoms of Alzheimer's disease in December, 1994, even though his family physician saw nothing indicating a problem during a visit on December 5, 1994.

A neighbor testified that on December 1, 1994 he saw a green pick-up truck parked in front of Ivan's house in the early afternoon, and there was a ladder leaning up against the front of the house. The neighbor testified that he saw three men and they were there "a half hour to an hour at the most." The neighbor further testified that the pickup truck bed was empty, and he observed no tools or equipment in the area. Later that day a paint can lid and paint can labels were found in the gutter in front of Ivan's residence.

On the same day, at approximately 2:00 p.m., Forrest attempted to cash a check for $2700 at the Wilmington Trust bank in Claymont. The check was made out to Forrest and had been signed by Ivan, but the amount and payee were not in Ivan's handwriting. A bank employee asked Forrest for a local address because he had presented an out of state driver's license. The employee, who was acquainted with Ivan, also asked Forrest if he had done some work for Ivan and was told that he had done "roof repair." The employee then discovered there were insufficient funds in the checking account to cover the check. The checking account had a balance of $840.47 that day. Ivan also had over $13,000 in an "instant access" savings account that permitted a transfer of funds to the checking account to prevent an overdraft if the bank received authorization.

After becoming suspicious, the employee called Ivan's son, Dennis, whom she knew, to see if he wanted to authorize a transfer of funds from the savings account to cover the check. Dennis had a power of attorney for his father and was a joint party on the bank

account. Dennis informed the employee that he had just visited with his father and did not believe that the roof needed repair. Dennis indicated that he would call Ivan to "see what's going on." During the time he was at the bank, Forrest became "nervous and jumpy." Dennis called the bank employee back and instructed her not to cash the check. The employee decided to keep the check to prevent it being cashed elsewhere. Forrest left the bank after being informed that the bank would retain the check.

Dennis testified that when he called his father to inquire about the check, Ivan told him, "a man was driving by my house and saw a hole in my roof and came and told me about it. I had him fix it and I paid him for it." Dennis explained to his father that he believed there was nothing wrong with the roof and that he was not going to authorize payment on the check. Ivan became upset with Dennis and stated that "this man was his friend," although subsequently admitting that he did not know him. According to Dennis' testimony, Ivan further stated to him, "he was up there for a couple of hours, and I heard him on the roof and he fixed my roof, and I owed him the money, therefore I gave him the check and they ought to cash it at the bank." Dennis testified that Ivan was angry, stubborn and argumentative and stated "[w]hy the hell are you acting the way you're acting and why are you doing what you're doing, and he did a damn good job on repairing the roof."

After talking with Ivan, Dennis called relatives and asked them to go to Ivan's house and to call the police. After talking to Ivan, one relative testified he went outside and looked at the roof and it "looked the same as it did prior to that day." The investigating police officer similarly testified that he did not observe any foreign substances or changes to the roof.

## II.

Forrest contends that the trial court erred by admitting the statements of Ivan through the testimony of Dennis pursuant to the state of mind exception to the hearsay rule found in D.R.E. 803(3). Forrest argues that the challenged statements, having their source in the memory of a person suffering from Alzheimer's disease, were "highly detrimental ... because it was the only evidence connecting him to the premises of the victim." Forrest additionally claims that the limiting instruction given to the jury that the statements may be considered only for the purpose of determining the issue of Ivan's state of mind, and not for their truth, was insufficient to "obviate prejudice" because it was "sheer fantasy" to believe that the jury could ignore the contents of the statements.

In admitting the disputed statements, the Superior Court ruled that in the overall context in which the statements were made, the proffered evidence could appreciably aid the jury in determining whether Ivan suffered from a mental defect and thus were "materially probative" of Ivan's then existing state of mind. The court further ruled that the probative value of the statements were not substantially outweighed by unfair prejudice. D.R.E. 403.

### A.

■ This Court follows an abuse of discretion standard when reviewing a trial court's decision on the admissibility of evidence. *Williamson v. State,* Del.Supr., 707 A.2d 350, 354 (1998); *Longfellow v. State,* Del.Supr., 688 A.2d 1370, 1372, *cert. denied,* — U.S. ——, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (1997). D.R.E. 803(3) provides an exception to the hearsay rule regardless of whether the declarant is available to testify, for a then existing mental, emotional or physical condition. That rule provides: "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of a declarant's will."

■ Prior to the adoption of D.R.E. 803(3) this Court in *Derrickson v. State,* Del.Supr., 321 A.2d 497, 503 (1974), set forth the foundational requirements for admitting a statement of present intention or an existing state of mind as an exception to the hearsay rule.

Those requirements are that the statement(s): i) must be relevant and material; ii) must relate to an existing state of mind when made; iii) must be made in a natural manner; iv) must be made under circumstances dispelling suspicion; and v) must contain no suggestion of sinister motives. *Id.*[1] We now reaffirm those requirements.

Forrest has not challenged Ivan's statements on the basis of relevancy or materiality. Nor has he claimed that the statements were made in an unnatural manner or that there has been a suggestion of sinister motives. Forrest contends that the statement was not made under circumstances dispelling suspicion merely because the statement was made by a declarant suffering from Alzheimer's. But "[t]he requirement that the statement be made under circumstances absent suspicion refers to the circumstances surrounding the declaration itself." *Derrickson*, 321 A.2d at 503. The fact that Ivan was suffering from a deteriorating mental condition was the very purpose of the State's proffer. The statements were thus properly admitted under D.R.E. 803(3) as probative of Ivan's then existing state of mind. We hold that the Superior Court did not abuse its discretion in so ruling.

### B.

Forrest contends that the prejudicial effect of admitting Ivan's statements was compounded by the insufficiency of the limiting instructions given to the jury. The Superior Court instructed the jury both before the testimony of Dennis, and again in its final instructions, that Ivan's statements were being introduced under the state of mind exception to the hearsay rule, that they were to be considered solely for that purpose, and not to be considered as evidence of the truth of their content. When asked by the court, none of the jurors responded that they did not understand the instruction. We presume that a jury complies with limiting instructions of the trial court. *Burton v. State*, Del.Supr., 149 A.2d 337, 340 (1959).

Forrest's claim of undue prejudice was considered by the trial judge under the appropriate balancing standard of D.R.E. 403. "[T]he determination of whether the probative value of a particular piece of evidence is substantially outweighed by the danger of unfair prejudice is a matter which falls particularly within the discretion of the trial judge, who has the firsthand opportunity to evaluate relevant factors." *Williams v. State*, Del.Supr., 494 A.2d 1237, 1241 (1985). Whether Ivan was an "infirm adult" as defined in 31 *Del.C.* § 3902(1) was an element of the offense of Exploitation of an Infirm Adult set forth in 31 *Del.C.* § 3913(b), an element the State was required to prove. The Superior Court did not abuse its discretion in ruling that the probative value of Ivan's statements was not substantially outweighed by the danger of unfair prejudice.

### C.

We next address Forrest's constitutional challenge to the admission of Ivan's statements as violative of confrontation rights under both the United States and Delaware Constitutions. Forrest acknowledges that under an analysis first expressed in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the requirements for confrontation clause purposes that the statements bear adequate indicia of reliability will be satisfied if they fall within a "firmly rooted" hearsay exception. Forrest again contends, however, that statements made by a person exhibiting symptoms of Alzheimer's disease are "inherently unreliable."

This Court reviews *de novo* claims alleging the infringement of a constitutionally protected right. *Williamson v. State*, Del.Supr., 707 A.2d 350, 354 (1998). When assessing the impact of the admission of hearsay statements on a defendant's confrontation rights, the "primary concern" is that the statements be "reliable and trustworthy." *Id.* at 355. "[A]ny statements that can be admitted under a 'firmly rooted'

---

1. We note that two Superior Court opinions have held that the *Derrickson* requirements survived Delaware's adoption of its Uniform Rules of Evidence in 1980. *State v. Porter*, Del.Super., 587 A.2d 188, 190 (1990); *State v. MacDonald*, Del.Super., 598 A.2d 1134, 1135–36 (1991). We agree with those rulings.

hearsay exception possess the requisite reliability to be admitted without a finding of unavailability." *Id.* at 356; *White v. Illinois,* 502 U.S. 346, 355–57, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). In *White,* the United States Supreme Court discussed the hearsay exceptions for spontaneous declarations and statements made for purposes of medical diagnosis or treatment and found them to be "firmly rooted" based on one being at "least two centuries old" and recognized "in nearly four-fifths of the States," and the other "equally widely accepted among the States." *Id.* at 355 n. 8, 112 S.Ct. 736.

▮▮▮▮ The hearsay exception for a statement reflecting a then existing state of mind, emotion, sensation or physical condition clearly falls into the category of a "firmly rooted" exception. This exception to the hearsay rule was discussed in *Mutual Life Ins. Co. of New York v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), and appears to have made its first appearance in Delaware as early as 1923 in *State v. Long,* Del.Ct. of Oyer and Terminer, 123 A. 350 (1923). Additionally the exception is recognized in at least forty-four states. In sum, we conclude that the admission of Ivan's statements pursuant to the "firmly rooted" state of mind exception [2] to the hearsay rule did not violate Forrest's Federal or State constitutional confrontation rights.

## III.

Forrest next argues that Theft is a lesser included offense of Exploitation of an Infirm Adult and his conviction of both offenses violates his double jeopardy rights under the United States and Delaware Constitutions. The Superior Court rejected that claim, as do we.

The State argues that an "examination of the statutes ... reveals a clear legislative intent to punish exploitation of an infirm adult separately from felony theft." The State contends that because exploitation of an infirm adult is a relatively new crime,

enacted in 1991, this subsequent enactment of an offense reflects a "legislative determination that additional sanctions were necessary to punish the type of conduct proscribed by the statute." Additionally, the State urges that the underlying focus of the two statutes is different and directed at the prevention of two "distinct evils." Applying a *Blockburger*[3] analysis, the State argues that Exploitation of an Infirm Adult requires proof that the victim is an infirm adult, while theft requires proof of an intent to deprive or appropriate property, resulting in either a permanent loss to the owner or the deprivation of a major portion of the economic value of the property, regardless of the identity of the victim. Therefore, the State argues each statute requires proof of an additional fact which the other does not.

▮▮▮▮ Once again, when a claim implicates the infringement of a constitutional right we exercise a *de novo* standard of review. *Stigars v. State,* Del.Supr., 674 A.2d 477, 481 (1996). To resolve a claim of double jeopardy we first look to whether the General Assembly intended to impose more than one punishment for a single occurrence of criminal conduct. *Id.* "In seeking to ascertain legislative intent, we must first look at the text of the statute[s] in [their] context[s]." *Id.*

The Theft statute, 11 *Del.C.* § 841, provides:

(a) A person is guilty of theft when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it. Theft includes the acts described in §§ 842–846 of this title.

(b) A person is guilty of theft if the person, in any capacity, legally receives, takes, exercises control over or obtains property of another which is the subject of theft, and fraudulently converts same to the person's own use.

---

2. Because we find that Ivan's statements fall within the hearsay exception we decline to address the State's argument that Ivan's statements were not hearsay and therefore Forrest's confrontation rights were not implicated.

3. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

(c)(1) Except where a victim is 60 years of age or older, theft is a class A misdemeanor unless the value of the property received, retained or disposed of is $1,000 or greater, in which case it is a class G felony.

(2) Where a victim is 60 years of age or older, theft is a class G felony unless the value of the property received, retained or disposed of is $1,000 or greater, in which case it is a class F felony.

\* \* \*

The offense of Exploitation of an Infirm Adult that Forrest was convicted of is found in 31 *Del.C.* § 3913(b). That section provides:

Any person who intentionally exploits an infirm adult by using the infirm adult's resources shall be guilty of a class A misdemeanor where the value of the resources is less than $500 and a class G felony where the value of the resources is $500 or more.

An "infirm adult" is defined as "any person 18 years of age or over who, because of physical or mental disability, is substantially impaired in the ability to provide adequately for the person's own care and custody." 31 *Del.C.* § 3902(1). "Physical or mental disability" is then defined to include "any physical or mental disability" including but not limited to "mental retardation, brain damage, physical degeneration, deterioration, senility, disease, habitual drunkenness or addiction to drugs, and mental or physical infirmity." 31 *Del.C.* § 3902(2). "Exploitation" means "the illegal or improper use or abuse of an infirm person, the infirm person's resources or the infirm person's rights, by another person, whether for profit or other advantage." 31 *Del.C.* § 3902(5).

■ Chapter 39 of Title 31 was first added in 1982. 63 Del.Laws, c. 384, § 1 (1982). In that enactment the General Assembly stated its recognition that "many adult citizens of this State are subject to psychological or physical injury or exploitation because of physical or mental infirmity, disease or other causes which render them incapable of pro-viding for their basic daily living needs." 39 *Del.C.* § 3901. The General Assembly stated its intent in enacting chapter 39 "to establish a system of services for impaired adults designed to protect their health, safety and welfare." *Id.* When the General Assembly added § 3913 in 1991, the Synopsis stated "[t]his Bill is intended *to expand* the criminal liability of any person who abuses, neglects, exploits, or mistreats an infirm adult in recognition of the fact that such illegal conduct may occur not only in licensed facilities by hired staff but also in private residences by family and friends." H.R.190, 136th General Assembly (Del.1991) (Emphasis supplied). *See* 68 Del.Laws, c. 42, § 2 (1991).

■ The legislative history of the enactment of § 3913 is strongly suggestive of the view that the General Assembly intended separate punishments for Exploitation of an Infirm Adult and Theft as reflected in its stated intention to *expand* criminal liability. Moreover, further support of legislative intent is provided by employment of the *Blockburger* test. That test asks whether each offense requires proof of a fact that the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *LeCompte v. State,* Del.Supr., 516 A.2d 898, 900 (1986).[4] The United States Supreme Court has reaffirmed the *Blockburger* "same elements" test while expressly invalidating the "same-conduct" test of *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *United States v. Dixon,* 509 U.S. 688, 704, 711–712, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

In this case there is no doubt that the offense of Exploitation of an Infirm Adult requires proof of an element that the offense of Theft does not—namely the existence of an infirm adult as the victim. But *Blockburger* requires further analysis. We must also consider whether the "converse is true"—whether the offense of Theft contains an element that is not part of the Exploitation of an Infirm Adult offense. *Rutledge v. United States,* 517 U.S. 292, 298, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

---

**4.** As we noted in *Stigars* the *Blockburger* test is consistent with 11 *Del.C.* § 206. 674 A.2d at 482.

We conclude that the specific intent elements of these offenses are distinct and different. Exploitation of an Infirm Adult requires an intent to "exploit," meaning illegally or improperly abusing or using an infirm person's rights or resources. 31 *Del.C.* § 3913(b), 3902(5). The Theft offense on the other hand requires the intent to take, exercise control over or obtain property of another. 11 *Del.C.* § 841.[5] The elements of the two offenses are not parallel and thus survive the *Blockburger* analysis.

## IV.

Forrest next attacks the sufficiency of the evidence to support either conviction. Forrest additionally argues that because the $2700 check given by Ivan was worthless, and since nothing of value was taken, there is no basis for a finding of guilt as to Theft.

The State responds that although the evidence established that Ivan had approximately $840.00 in his checking account, he also had $13,000.00 in his "instant access" savings account that was transferable to cover the $2700.00. The State argues that the check remained negotiable and it was only the actions of the suspicious bank employee that prevented Forrest from cashing the check at Wilmington Trust or elsewhere, or transferring the check to a holder in due course.

■ When reviewing a challenge to the sufficiency of the evidence the applicable standard is whether considering the evidence in the light most favorable to the prosecution, including all reasonable inferences to be drawn therefrom, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bar-*

*nett v. State,* Del.Supr., 691 A.2d 614, 618 (1997). We draw no distinction between circumstantial and direct evidence when considering the quantum necessary to support a conviction. *Williams v. State,* Del.Supr., 539 A.2d 164, 167–168, *cert. denied,* 488 U.S. 969, 109 S.Ct. 500, 102 L.Ed.2d 536 (1988).

### A.

■ After considering the evidence in the light most favorable to the prosecution, including all reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of Exploitation of an Infirm Adult beyond a reasonable doubt. First, there was both expert and lay testimony, in addition to Ivan's statements, that supported a conclusion that Ivan was suffering from Alzheimer's disease on December 1, 1994. A person suffering from Alzheimer's disease can fall within the statutory definitions requiring a physical or mental disability, including physical degeneration, deterioration or senility, which substantially impairs that person's ability to provide adequately for their own care and custody. 31 *Del.C.* § 3902(1), (2); *State v. Sailer,* Del.Super., Nos. 9412009559, 9412009572, 1996 WL 111122 at *2 (Feb. 28, 1996).

Any rational trier of fact could have also found sufficient evidence to support the remaining elements of the offense of Exploitation of an Infirm Adult. Dennis testified that during a recent visit to his father's house there had been no sign of a problem with the roof. Other witnesses also testified that there was no "foreign substance" observed on the roof subsequent to the "roof repair," and that the roof "looked the same as it did prior to that day." A neighbor also

---

**5.** The following definitions apply to the Theft offense and are found in 11 *Del.C.* § 857:

(1) "Deprive" means to withhold property of another person permanently or for so extended a period or under such circumstances as to withhold a major portion of its economic value or benefit, or with intent to restore it only upon payment of a reward or other compensation, or to dispose of property of another person so as to make it unlikely that the owner will recover it.

(2) "Appropriate" means to exercise control, or to aid a third person to exercise control,

over property of another person permanently or for so extended a period or under such circumstances as to acquire a major portion of its economic value or benefit, or to dispose of property for the benefit of the actor or a third person.

(3) "Obtain" means to bring about or receive a transfer or purported transfer of any interest in property, whether to the defendant or to another person.

\* \* \*

testified that he saw three men at Ivan's house early in the afternoon and that they were there no more than an hour. The neighbor also testified that he saw no tools or equipment at the scene.

The evidence also established that Forrest presented a check in the amount of $2700 at the bank within hours of the time the work was allegedly performed. Although the check was signed by Ivan, Forrest's name and the amount were not in his handwriting.

At the bank, Forrest claimed to have done "roof repair" and became "nervous and jumpy" when Dennis was called to authorize a transfer of funds. These facts and the reasonable inferences drawn therefrom support a finding that Forrest intentionally used an infirm adult's resources for his own profit in that he caused Ivan to sign a check to him for $2700 for work that was not needed and never done. There was sufficient evidence to support Forrest's conviction for Exploitation of an Infirm Adult.

## B.

▮ Applying the same standards to the challenge regarding the sufficiency of the evidence to support the Theft conviction, we again find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In order to prove theft the prosecution had to establish that Forrest took, exercised control or obtained Ivan's property intending to deprive him of it or appropriate it. 11 *Del.C.* § 841(a). Property is defined as "anything of value except land, and includes ... documents although the rights represented thereby have no physical location, contract rights, ...." 11 *Del.C.* § 857(4). "The definition of property ... is very broad. The old limitations on the kind of property that could be the subject of larceny are intentionally discarded." *Commentary on Delaware Criminal Code,* p. 293 (1973).

▮ The same evidence concerning Forrest's conduct at the bank is supportive of an intent to appropriate Ivan's property, *i.e.,* funds on deposit. Forrest's claim that Ivan's check was "worthless" and therefore was not property as defined as "anything of value" is

meritless. Under 11 *Del.C.* § 224(2)a the value of a check is "deemed the amount due or collectible thereon." The value of the property is determined "at the time and place of the crime." 11 *Del.C.* § 224(1); *Scott v. State,* Del.Supr., No. 24, 1993, 1993 WL 445483 at * 2 (Nov. 1, 1993) (ORDER); *Young v. State,* Del.Supr., No. 118, 1986, 1986 WL 17135 at * 1 (July 25, 1986) (ORDER).

While a blank check may not support a theft conviction, *see Deerman v. State,* Ala. Crim.App., 448 So.2d 492 (1984), checks that have not been cashed because of a stop payment order or that contain restrictive endorsements have been found to have sufficient value to support theft. *Jeffcoat v. United States,* D.C., 551 A.2d 1301, 1303 (1988); *State v. Long,* Neb.Ct.App., 2 Neb. App. 847, 516 N.W.2d 273, 276 (1994). Additionally, many jurisdictions apparently find the issue of sufficiency of funds irrelevant. *State v. Harris,* La.Supr., 708 So.2d 387, 390, 390 n. 4 (1998); *Long,* 516 N.W.2d at 276; *but see Davila v. State,* Tex.Ct.App., 956 S.W.2d 587, 589 (1997) (ruling that "[p]roof of theft of the value of a check requires showing the drawer of the check had funds sufficient to cover the check at the time the actor came into possession of the check").

Unlike the theft of a blank check, Ivan's check was completed and negotiable. The situation here is more analogous to a stop payment order. The fact that a transfer of funds from Ivan's "instant access" savings account would have been required does not make the check "worthless." We affirm Forrest's conviction for Theft.

## V.

Forrest's final argument is that the State's rebuttal summation was excessive in "breadth and length." He contends that the State both "sandbagged" him with "law of chances material" and took "two swings" at opening summation. This, Forrest contends, compromised his right to fair trial.

The Superior Court overruled Forrest's counsel's objection to the rebuttal summation and stated that the summation did not amount to "sandbagging, because it [was] another way of stating the State's theory of the case and no new material [was] really

being raised" and fell "within the realm of rebuttal." The court then instructed the State to confine its argument to rebuttal.

 A trial court's application of the rule governing the scope of rebuttal is reviewed for abuse of discretion. *Bailey v. State,* Del.Supr., 440 A.2d 997, 1003 (1982). "Sandbagging" occurs when "a prosecutor omits from his opening summation a salient argument of the State's case only to bring forth the argument in closing after the defense has arguably been induced to avoid the subject in closing." *DeShields v. State,* Del. Supr., 534 A.2d 630, 645 (1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 217 (1988). Impermissible "sandbagging" violates a defendant's right to fair trial. *Id.; Bailey,* 440 A.2d at 1003.

In *Bailey* we held that the trial court abused its discretion "in permitting the State to utilize the inherently prejudicial 'sandbagging' trial strategy." 440 A.2d at 1003. There the State's opening summation was a mere three and one-half pages of the transcript, lasting only five minutes. *Id.* at 1000. The opening summation included only a passing reference to one of the witnesses, and contained no other comment on the testimony of any witness or the circumstances surrounding the arrest. *Id.* In contrast, the State's rebuttal summation lasted over an hour and contained the "bulk of the State's final argument to the jury," discussing witness testimony of numerous witnesses not mentioned in the opening or defense summations. *Id.* at 1001.

 We conclude that the State's rebuttal summation did not constitute "sandbagging" and therefore there was no abuse of discretion by the trial court in overruling Forrest's objection. A review of the record indicates that the State did not omit from its opening any significant issue that had not been raised in the State's opening or the defense summations. The "law of chances" material to which Forrest objects was a recasting of the State's arguments regarding reasonable inferences from the evidence that the State wished the jury to draw and a response to defense arguments. The State's rebuttal summation did not contain a salient argument not addressed in the opening and

therefore the defense was not deprived of an opportunity to reply.

Nor was the State's rebuttal summation excessive in "breadth and length." The record reflects that the State's opening summation was approximately twenty-eight pages in length, the defense summation was approximately thirty-eight pages, and the rebuttal summation approximately twenty-four pages. This stands in stark contrast to the five minutes of opening and over one hour rebuttal summations from *Bailey.* We find that the Superior Court did not abuse its discretion in overruling Forrest's objection to the State's rebuttal summation.

The judgment of conviction of the Superior Court is AFFIRMED.